MURPHY, C.J.
 

 This appeal from the Circuit Court for Baltimore City presents issues that are usually resolved by agreement of the parties and/or counsel.
 
 [1]
 
 Unfortunately, for reasons that are of no consequence to our resolution of these issues, neither the parties nor their counsel could reach an agreement, and their failure or refusal to do so has resulted in two appeals, the second of which is No. 1042, September Term, 2003. For the reasons that follow, we hold that William C. Bond (Mr. Bond), appellant, is entitled to a hearing on the issue of whether the circuit court should enter a protective order that would prohibit the unauthorized disclosure of financial records produced in a domestic relations case, and we remand for further proceedings not inconsistent with this opinion. In No. 1042, we hold that the award of counsel fees to William H. Slavin (Mr. Slavin) and Bank of America (the Bank), appellees, must be vacated as premature.
 

 
 *346
 
 Background
 

 Appellant is currently married to Alyson Bond (Mrs. Bond), who was formerly married to Mr. Slavin. Mrs. Bond and Mr. Slavin have two minor children from their previous marriage and have been involved in support, custody, and other litigation for several years.
 
 [2]
 
 The case at bar stems from Mr. Slavin’s petition for change of custody and child support. A hearing on that petition was scheduled to be held on February 18, 2003.
 

 On January 24, 2003, Mr. Slavin’s attorneys issued a subpoena duces tecum to the Bank, requiring that a custodian of records or a corporate designee appear at the February 18th hearing and produce certain of Mrs. Bond’s financial records—including Mr. and Mrs. Bond’s joint accounts.
 
 [3]
 
 A copy of the subpoena was mailed to Mrs. Bond’s counsel. On or about January 27, 2003, Mr. Slavin’s attorneys filed a Certificate of Service certifying that the lawyer for the account holder had been notified that the subpoena had been issued.
 
 [4]
 

 Mr. Slavin’s counsel notified a representative of the Bank that no Bank employee would have to appear at the hearing if the records were forwarded directly to her. On February 14,
 
 *347
 
 2003, before it received any objection to disclosure of the records, the Bank delivered the subpoenaed records directly to Mr. Slavin’s counsel. A snowstorm caused a postponement of the February 18, 2003 hearing, which was rescheduled to June 23, 2003.
 
 [5]
 
 Appellant objected to the disclosure of any joint account records.
 
 [6]
 

 
 *348
 
 On March 11, 2003, appellant filed Motions For a Protective Order and a Restraining Order,
 
 [7]
 
 requesting that (1) Mr. Slavin’s counsel be ordered to place in the custody of the court all original copies and other copies of appellant’s records obtained from the Bank, and make no direct or indirect use of those records or the information contained therein for any purpose unrelated to the litigation;
 
 [8]
 
 and (2) the Bank be ordered to cease any further production of appellant’s banking records.
 
 [9]
 
 Appellees responded by arguing that appellant’s motions were incorrectly filed, frivolous, and without merit.
 
 [10]
 
 In addition, Mr. Slavin requested an award of counsel fees.
 

 On April 2, 2003, after mistakenly entering an order granting appellant’s motions and thereafter “striking” that order, the circuit court entered orders that (1) denied appellant’s motions and (2) provided that counsel for Mr. Slavin “may submit a petition for expenses, including attorney’s fees pursuant to Md. Rule 1-341.” The April 2, 2003 orders were docketed in the domestic violence case on April 7, 2003. On April 17, 2003, appellant filed a Notice of Appeal,
 
 [11]
 
 but did not
 
 *349
 
 pay the required filing fee until June 16, 2003.
 
 [12]
 
 The circuit court clerk did not docket the notice until June 11, 2003.
 
 [13]
 

 On May 5, 2003, Mr. Slavin filed a Petition for Expenses. On June 12, 2003, the circuit court entered an order requiring appellant’s lawyers to pay $6,024.94 in attorney’s fees to Mr. Slavin’s counsel. On June 19, 2003, appellant filed a Motion to Alter or Amend the sanction award and a request for a hearing on that motion.
 

 Appellant also filed Motions for Protective Order and for Restraining Order (renamed Motion for Injunctive Relief) in the child custody case.
 
 [14]
 
 On June 23, 2003, the circuit court denied those motions, declaring them moot, and instructed appellees to submit additional petitions for attorney’s fees. Through an order entered June 26, 2003, the circuit court denied appellant’s Motion to Alter or Amend the June 12, 2003 order.
 

 On July 29, 2003, the circuit court entered an order that (1) memorialized its June 23rd rulings, and (2) awarded additional attorney’s fees to Mr. Slavin, in the amount of $1,714.04, and to the Bank, in the amount of $956.25. On July 30, 2003, appellant filed a third Notice of Appeal,
 
 [15]
 
 this one in
 
 *350
 
 the child custody case. Appellant’s first Notice of Appeal has resulted in the case at bar, No. 208, September Term 2003. His third Notice of Appeal has resulted in Case No. 1042, September Term, 2003, in which we address issues involving orders entered subsequent to the date on which appellant filed his first appeal.
 
 [16]
 

 Appellee’s Motions to Dismiss
 

 I. The Filing Fee Issue
 

 The Orders at issue were signed on April 2, 2003 and entered on April 7, 2003. Appellant’s Notice of Appeal was received by the Clerk of the Circuit Court on April 17, 2003, and was date-stamped at 12:29 p.m. Although the Notice was filed that day,
 
 [17]
 
 the Clerk did not docket the Notice until June 11, 2003. According to appellees, because appellant did not pay the filing fee until June 16, 2003, Md. Rule 8-201 requires that his appeal be dismissed.
 
 [18]
 
 We reject the argument that
 
 *351
 
 an appeal is not
 
 actually filed
 
 until the filing fee is paid.
 
 [19]
 

 According to Md.Code, Cts. & Jm Pkoc. § 2-201(b) (2003), the clerk has no duty “to record any paper
 
 filed
 
 with him [or her]” until costs are paid.
 
 [20]
 
 We are persuaded that to “record” means to “docket,” rather than to “file.” If an appellant fails to pay the filing fee, the clerk is not required to
 
 docket
 
 the Notice, but the clerk is required to
 
 fils
 
 it.
 
 [21]
 
 “The only authority that a clerk has to refuse to accept and file a paper presented for filing is that contained in Md. Rule 1-323.”
 
 Director of Fin. v. Harris,
 
 90 Md.App. 506, 511, 602 A.2d 191 (1992).
 

 “The date that a pleading or paper is ‘filed’ is the date that the clerk receives it....” Paul V. Niemeyer & Linda M. Schuett, Maryland Rules Commentary 47 (3d.ed.2003). “A pleading or paper is filed by
 
 actual delivery
 
 to the clerk.... ”
 
 Id.
 
 Rule 8-201 does not provide that failure to pay the filing
 
 *352
 
 fee prohibits a Notice of Appeal from being “filed.” We therefore hold that, except for notices of appeal that fail to comply with the certificate of service requirement of Md. Rule 1-328,
 
 [22]
 
 the notice of appeal is filed on the date that the clerk receives the notice, not the date on which the clerk receives the filing fee.
 

 In the case at bar, (1) the circuit court did not strike the Notice, and (2) appellees did not move to have it stricken. Those actions are permitted under Rule 8-203(a)(3). Furthermore, the clerk actually filed the Notice
 
 before
 
 receiving the fee. There is no evidence whatsoever that (1) appellees were prejudiced by the late payment of the fee, or that (2) the course of the appeal was delayed in any way.
 
 [23]
 
 While we recognize that it is generally within our power to dismiss an appeal if the appeal was not properly taken pursuant to Rule
 
 *353
 
 8-201,
 
 [24]
 
 it is the practice of this Court to decide appeals on the merits rather than on technicalities. We hold that appellant’s Notice of Appeal satisfied the requirements of Rule 8-201, and therefore deny appellees’ motion to dismiss the appeal on the ground of appellant’s tardy payment of the filing fee.
 

 II. Jurisdiction and Mootness Issues
 

 Mr. Slavin argues that this Court does not have jurisdiction over the circuit court’s denial of appellant’s Motion for a Temporary Restraining Order. We disagree. Under C.J. § 12—303(3)(iii), a party may appeal from an order refusing to grant an injunction. Maryland Rule 15-501 (c) defines a “temporary restraining order” as an
 
 “injunction
 
 granted without opportunity for a full adversary hearing on the propriety of its issuance.” (emphasis added). The circuit court’s refusal to grant appellant’s temporary restraining order is an appealable order, and this Court has jurisdiction to address it.
 

 The Bank argues that the issues presented in this case are moot because (1) the Bank has already disclosed appellant’s financial records to Mr. Slavin’s counsel, and (2) it is too late to provide a remedy. In
 
 Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.,
 
 184 F.Supp.2d 1353 (N.D.Ga.2002), the United States District Court for the Northern District of Georgia held that the failure to file two depositions under seal did not render moot a subsequently filed motion to seal the depositions, even though (1) the unsealed depositions had been placed in the court’s public file, and (2) the file had been transferred to a federal public storage facility.
 
 Id.
 
 at 1365-67. We agree with that analysis, and shall apply it in the case at bar.
 

 Appellees also argue that, because Mr. Slavin and Mrs. Bond have settled the custody and child support issues that prompted the request for financial records, this case has become moot.
 
 [25]
 
 Appellate courts generally do not decide
 
 *354
 
 academic or moot questions. There are, however, “ ‘rare instances,’ ” in which “ ‘the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest [and requires] a departure from the general rule and practice of not deciding academic questions.’ ”
 
 Mercy Hosp. v. Jackson,
 
 306 Md. 556, 562-63, 510 A.2d 562 (1986) (quoting
 
 Lloyd v. Supervisors of Elections,
 
 206 Md. 36, 43, 111 A.2d 379 (1954));
 
 see also Ins. Comm’r of the State of Maryland, et al. v. Equitable Life Assurance Soc’y of the United States,
 
 339 Md. 596, 614, 664 A.2d 862 (1995). The circumstances under which and procedures by which confidential financial information can be protected from unauthorized disclosure are “issues ... of important public concern.” So is the issue of whether a bank (or any recipient of a subpoena that calls for the production of financial records) can provide financial records to the requesting party prior to the date and time specified on the subpoena.
 
 [26]
 

 The Necessity for a Remand
 

 I. Appellant’s Right to a Hearing
 

 Appellant argues that the orders of April 2, 2003 should be vacated and this case remanded because the circuit court was required to hold a hearing on the motions. This argument is based upon Rule 2—311(f), which, in pertinent part, states:
 

 Hearing—Other motions. A party desiring a hearing on a motion, other than a motion filed pursuant to Rule 2-532, 2-533, or 2-534, shall request the hearing in the motion or
 
 *355
 
 response under the heading “Request for Hearing.” Except when a rule expressly provides for a hearing, the court shall determine in each case whether a hearing will be held, but
 
 the court may not render a decision that is dispositive of a claim or defense without a hearing if one was requested as provided in this section.
 

 (Emphasis added). Appellees argue that a hearing is not required unless the court’s ruling would be “dispositive of a claim or defense.” Md. Rule 2—311(f). In the case at bar, however, the denial of appellant’s motions was “dispositive” of his request for relief.
 

 Appellees also argue that, because it was Mr. Slavin who requested the hearing, the circuit court was not required to hold a hearing before denying the relief sought by appellant. There is no merit in that argument. In
 
 Adams v. Offender Aid & Restoration of Baltimore, Inc.,
 
 114 Md.App. 512, 515-16, 691 A.2d 248 (1997), this Court held that if any party requests a hearing, no other request is necessary to obtain a hearing. Because (1) the order denying appellant’s motions was dispositive of appellant’s claim, and (2) Mr. Slavin requested a healing on the motions, the circuit court erred in denying the motions without holding a hearing. We therefore remand for the hearing to which the parties are entitled.
 

 Appellees also argue that the circuit court did not abuse its discretion in denying appellant’s motions because appellant filed them in the “wrong case.” We do not know why the circuit court denied these motions, but we refuse to infer that the circuit court would impose such an extreme sanction simply because the wrong case number appears on the motions. It is for the circuit court to (1) hold the hearing to which the parties are entitled, and (2) provide an explanation for its rulings so that any aggrieved party will have an opportunity for meaningful appellate review.
 
 [27]
 

 
 *356
 
 II. Appellant’s Right to Protection of His Financial Records
 

 Appellant argues that his financial records were wrongfully disclosed when his wife’s financial records were subpoenaed in the custody/support case. According to appellant, because his wife’s records included their joint accounts, his financial records were also disclosed. Appellees argue that (1) the Bank did not violate the Maryland Confidential Financial Records Act when it disclosed appellant’s financial records prior to the hearing date indicated on the subpoena, and (2) appellant, as a non-party, lacked standing to obtain any redress for alleged noncompliance with the subpoena. Whatever merit there might be in those arguments, the circuit court should not have addressed any of them without holding the hearing to which appellant is entitled, and at which the circuit court shall be guided by the following principles.
 

 No party has an absolute right to examine confidential records that have been subpoenaed to the courtroom. A bank depositor has a right to expect that the bank will, to the extent permitted by law, treat as confidential all information regarding the depositor’s account and related transactions.
 
 Suburban Trust Company v. Waller,
 
 44 Md.App. 335, 344, 408 A.2d 758 (1979). The Maryland Financial Institutions Code prohibits the disclosure of financial records, except under certain circumstances.
 

 Except as otherwise expressly provided in this subtitle, a fiduciary institution, its officers, employees, agents, and directors:
 

 (1) May not disclose to any person any financial record relating to a customer of the institution unless:
 

 
 *357
 
 (i) The customer has authorized the disclosure to that person....
 

 Fin. Inst. § 1-302. Section l-304(b) describes the procedure by which a bank may disclose customer records when served with a subpoena.
 

 (b)
 
 Disclosure or production
 
 permitted.—A fiduciary institution may disclose or produce financial records or information derived from financial records in compliance with a subpoena served on the fiduciary institution, if:
 

 (1) The subpoena contains a certification that a copy of the subpoena has been served on the person whose records are sought by the party seeking the disclosure or production of the records; or
 

 (2) Contains a certification that service has been waived by the court for good cause.
 

 Absent compulsion by law, a bank may not make any disclosure concerning a depositor’s account without express or implied consent of the depositor.
 
 Suburban Trust,
 
 44 Md.App. at 344, 408 A.2d 758;
 
 see also Taylor v. Nations-Bank, N.A.,
 
 365 Md. 166, 179-80, 776 A.2d 645 (2001). When served with a subpoena, so long as the bank follows correct procedure, it may disclose financial records of a customer. It is up to the customer to object to such disclosure. When the customer does not object, for whatever reason, and the records are disclosed prior to the date on the subpoena, the customers are not thereby stripped of a property interest in those records. Courts could not function effectively if they lacked the power to limit the use parties could make of sensitive information obtained through the court’s processes.
 
 Bittaker v. Woodford,
 
 331 F.3d 715, 726 (9th Cir.2003).
 

 The subpoena at issue was served on Bank of America and commanded a custodian of records to “[pjersonally appear and produce documents or objects: at Circuit Court for Baltimore City, Courthouse East, Family Division, Room 3, 1st Floor, 111 North Calvert Street, Balt., MD 21202 on Tuesday the 18th day of February, 2003 at 9:30 a.m.” Instead, the Bank delivered the joint bank records of Mr. and Mrs. Bond to counsel for Mr. Slavin at a time prior to and place
 
 *358
 
 other than that specified in the subpoena. The Bank had no right to do so. When a court issues a subpoena duces tecum requiring a custodian of financial records to “personally appear and produce [financial records]” at a certain place on a certain date and time, the custodian cannot—without obtaining the permission of the person(s) whose financial records have been subpoenaed—produce those records at a different place on a different date. Such a subpoena “does not ... signify a delivery of the papers into the hands of the party calling for their production or of his counsel, or a submission of them to his examination.... ”
 
 Banks v. Connecticut Railway & Lighting Co., 79 Conn.
 
 116, 118-19, 64 A. 14 (1906).
 
 [28]
 
 The Bank was required to bring the records into court, where (1) any person whose records had been subpoenaed would be entitled to ask the court to resolve claims of relevancy, privilege, or confidentiality, and (2) the court would have the authority to issue an order protecting the records from improper use.
 
 [29]
 

 The Maryland Rules of Procedure, like the Federal Rules of Civil Procedure,
 
 [30]
 
 provide the courts with “a grant of
 
 *359
 
 power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court’s processes.”
 
 Bridge C.A.T. Scan Associates v. Technicare Corp.,
 
 710 F.2d 940, 944-45 (C.A.N.Y.1983).
 

 Rule Md. 2-510(e), in pertinent part, provides:
 

 Objections to subpoena for court proceedings. On motion of a person served with a subpoena to attend a court proceeding ... at or before the time specified in the subpoena for compliance, the court may enter any order that justice requires to protect the person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
 

 (4) that documents or other tangible things designated in the subpoena be delivered to the court at or before the proceeding or before the time whey they are to offered in evidence, subject to further order of court to permit inspection of them.
 

 This rule does not prohibit appellant from requesting appropriate relief. Under federal law, a motion to quash or modify a subpoena duces tecum may be made by a party who was not served with the subpoena, if that party has a personal right or privilege with respect to the material requested in the subpoena.
 
 Smith v. Midland Brake, Inc.,
 
 162 F.R.D. 683, 685 (D.Kan.1995)(citing F.R.Civ.P. 45(c)(3)(A));
 
 see also Transcor, Inc. v. Furney Charters, Inc.,
 
 212 F.R.D. 588, 591 (D.Kan.2003)(citing F.R.Civ.P. 45(c)(3)(A)) (as bank customer, defendant had a personal right with respect to its bank account records at banks which were subject of subpoenas duces tecum issued by plaintiff, and that right gave defendant standing to move to quash the subpoenas);
 
 Broadcort Capital Corp. v. Flagler Securities, Inc.,
 
 149 F.R.D. 626, 628 (D.Colo. 1993) (citing F.R.Civ.P. 45) (nonparty and defendant in securi
 
 *360
 
 ties action had standing to object to subpoena duces tecum of telephone company records based on claims that records were privileged, despite contention that only the served party could object).
 

 “[A] trial court is duty-bound, where it orders production of documents in which there are strong policy reasons against public disclosure, to limit the availability and use of those documents and their contents by carefully drawn protective provisions.”
 
 Carr v. Monroe Mfg. Co.,
 
 431 F.2d 384, 390 (5th Cir.1970) (citing
 
 Baim & Blank, Inc. v. Bruno-New York, Inc.,
 
 17 F.R.D. 346 (S.D.N.Y.1955)).
 
 [31]
 
 In
 
 Bush Development Corporation v. Harbour Place Associates,
 
 632 F.Supp. 1359 (E.D.Va.1986), although the court found that bank customers had no standing to quash a subpoena filed in a civil action, the court issued the following protective order:
 

 Plaintiffs counsel shall not disclose the contents to any other person or entity other than the agents of his client and the information contained shall be used solely for purposes of this law suit and the disclosure, if any, of the documents or any part thereof by plaintiffs counsel and his agents and employees or by the agents or employee of the plaintiff corporation for any other purpose is expressly forbidden.
 

 Id.
 
 at 1364.
 

 When documents that should be presented to the court on a particular date have been presented in advance of that date to the party who issued the subpoena, the fact that harm resulting from the premature production
 
 may
 
 be irreversible does not render the court powerless to fashion some form of meaningful relief. See
 
 Church of Scientology v.
 
 
 *361
 

 United States,
 
 506 U.S. 9, 12-13, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992),
 
 [32]
 
 which holds that (1) taxpayers have a possessory interest in their tax records, (2) “[w]hen the Government has obtained such materials as a result of an unlawful summons, that interest is violated and a court can effectuate relief by ordering the Government to return the records,” (3) when the Government’s retention of copies of the records constitutes a continuing injury to the taxpayer’s privacy, even though it is too late to prevent the initial invasion of privacy, “a court does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession,” and (4) the availability of this potential remedy was sufficient to prevent the case from being moot.
 
 Id.
 
 at 13, 113 S.Ct. 447.
 

 The Bank argues that appellant lacked standing to obtain protection of his financial documents. There is, however, ample Maryland precedent for the proposition that non-parties have standing to obtain judicial relief from the unauthorized disclosure of statutorily protected records. In
 
 Ashton v. Cherne Contracting Corporation,
 
 102 Md.App. 87, 648 A.2d 1067 (1994), this Court held that, although the jointly-filed tax returns of a witness were subject to discovery,
 
 [33]
 
 the witness was entitled to a protective order redacting those portions of the returns that were irrelevant.
 
 Id.
 
 at 98, 648 A.2d 1067. See also
 
 Rolley v. Sanford,
 
 126 Md.App. 124, 727 A.2d 444 (1999), in which this Court held that portions of joint
 
 *362
 
 income tax returns could be redacted to prevent disclosure of irrelevant financial information about the spouse of a party to the litigation. In
 
 Warner v. Lerner,
 
 348 Md. 733, 705 A.2d 1169 (1998), the Court of Appeals held that the Confidentiality of Medical Records Act, Md.Code, Health-Gen. I § 4-301 through 4-309 (2003), permitted a lawsuit by a plaintiff who learned that his medical records had been used without his permission in a medical malpractice action to which he was not a party.
 
 Id.
 
 at 740-41, 705 A.2d 1169.
 

 III. Proceedings on Remand
 

 We remand this case to the circuit court for an evidentiary hearing,
 
 [34]
 
 and direct that the hearing required by this opinion be held as promptly as is reasonably practicable.
 
 [35]
 
 The hearing will be held pursuant to the maxim that the (Equity) court should consider to have been done that which should have been done. The circuit court shall therefore (1) require that appellees’ counsel, in their roles as officers of the court, deliver to the court each and every item that the Bank turned over to Mr. Slavin’s counsel,
 
 [36]
 
 (2) identify which of those
 
 *363
 
 financial records involve Mr. Bond, (3) determine whether any of the financial records involving Mr. Bond, and/or the information derived from those records, have been disclosed to persons or organizations who are not parties to the case that was scheduled to be heard on February 18, 2003, and (4) resolve the issue of whether, and/or to what extent, Mr. Bond is entitled to an appropriate order protecting him against the improper (direct and derivative) use of his financial records.
 

 JUDGMENT VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; EACH PARTY TO PAY HIS/ITS OWN COSTS.
 

 [1]
 

 . Appellant presents the following questions for our review:
 

 I. SHOULD THE ORDERS OF APRIL
 
 2,
 
 2003 BE VACATED AND THIS CASE REMANDED SO THAT THE CIRCUIT COURT MAY HOLD A HEARING IN ACCORDANCE WITH MARYLAND RULE 2—311 (f) ?
 

 II. MAY A FINANCIAL INSTITUTION DISCLOSE
 
 EX PARTE
 
 ITS CUSTOMER'S BANKING RECORDS TO A THIRD PARTY WITHOUT PRIOR PERSONAL NOTICE TO ALL ACCOUNT HOLDERS AND IN ADVANCE OF A HEARING TO WHICH THE RECORDS WERE SUBPOENAED TO OPEN COURT?
 

 III. DID THE CIRCUIT COURT ERR IN AWARDING ATTORNEY’S FEES PURSUANT TO MARYLAND RULE 1-341?
 

 Because we answer "yes” to question I, we remand for further proceedings not inconsistent with this opinion.
 

 [2]
 

 .
 
 See Alyson (Slavin) Bond v. William H. Slavin,
 
 Case No. 24-D-95-249006 (Cir. Ct. Baltimore City) (hereinafter referred to as the “child custody case”). In September of 2001, Mrs. Bond filed a Petition for Relief from Abuse in which she requested that a Protective Order be entered against Mr. Slavin.
 
 See Bond v. Slavin,
 
 Civil Action No. 24—D-01-003359 (Cir. Ct. Baltimore City) (hereinafter referred to as the "domestic violence case”). Neither the appellant nor Bank of America were parties to this case. That case concluded in Mr. Slavin’s favor on January 3, 2002, when the Circuit Court for Baltimore City voided a Protective Order that had been entered at an earlier point in time.
 

 [3]
 

 . Although the subpoena was supposed to have been issued in the child custody case, the case number on the subpoena is 952490061/CE 201677. This number is close to the number of the child custody case, but the format is different. This mistake was the first of many that have resulted in the needless waste of time, energy, and judicial resources.
 

 [4]
 

 . This certification was filed pursuant to § 1-304 of Maryland's Financial Institutions Article.
 
 See
 
 MdCode, Fin. Inst. § 1-304 (2003). Mrs. Bond claims that she was not notified by her attorney that a subpoena had been issued for her bank records.
 

 [5]
 

 . Immediately prior to the June 23, 2003 hearing, Mrs. Bond and Mr. Slavin resolved their custody and support dispute. During the hearing, the parties put on no evidence other than that of the settlement agreement. The records at issue were not marked for identification or used in any way.
 

 [6]
 

 . According to appellant, on Saturday February 15, 2003, Mrs. Bond received a letter from the Bank, postmarked February 13, 2003, advising her that a subpoena had been issued, and instructing her to notify the Bank immediately if she intended to file a motion objecting to the disclosure of her records. According to the Bonds, this was the first notice they received of the existence of this subpoena. By faxes and letters dated Sunday, February 16 and Monday, February 17, and by voice mail messages from appellant’s counsel on February 20, the Bonds notified the Bank that they would not grant permission for disclosure, and that they intended to file motions to prevent the disclosure of their financial records.
 

 February 17, 2003 was President's Day and the weekend of a severe snowstorm that paralyzed the area. As a result, the courts were closed on February 18 and 19. Bank of America was also closed on February 18.
 

 On February 21, 2003, a representative of the Bank wrote to appellant’s counsel, advising that the records had been produced within two business days prior to the scheduled hearing, and that the Bank intended to continue production of any additional records, absent a court order. That same day, the Bank sent Mrs. Bond a letter, advising her of the particular account information that had been provided to Mr. Slavin's counsel.
 

 On February 21, 2003, appellant’s attorney requested that no further production or release of banking records be made to Mr. Slavin’s counsel. On February 24, February 27, and March 4, 2003, appellant’s counsel wrote to Mr. Slavin’s counsel, requesting that the records be returned either to the Bank or to appellant and/or that Mr. Slavin and his counsel agree not to make any direct or indirect use of the records or the information contained therein.
 

 On February 25, Mr. Slavin’s counsel wrote to the Bank, requesting that the Bank continue its production of documents. On February 27, appellant’s counsel demanded that the Bank obtain the return of the records. By letter dated March 3, 2003, Mr. Slavin’s counsel declined to return the records and threatened to seek sanctions against appellant’s counsel. By letter dated March 6, 2003, the Bank advised that it
 
 *348
 
 would continue to produce records to Mr. Slavin’s counsel until it received an order quashing the subpoena.
 

 [7]
 

 . Unfortunately, these motions were erroneously filed in the domestic violence case.
 

 [8]
 

 . Although Mr. Slavin subpoenaed only Mrs. Bond’s bank records, appellant sought to prevent the production of the records in which he was identified as a joint account holder.
 

 [9]
 

 . The motions also requested that the court order the Bank to pay appellant $2000 in attorney's fees, and order such other relief justice may require.
 

 [10]
 

 . Appellant filed these motions in the domestic violence case, á case that had already been concluded and to which the motions had no relevance, instead of the child custody case in which the subpoena arguably had been issued. Appellees filed their papers in both the domestic violence case and the child custody case out of an. abundance of caution.
 

 [11]
 

 . This Notice of Appeal, filed in the domestic violence case, resulted in the instant appeal.
 

 [12]
 

 . Appellant also filed—in the circuit court and in this Court—Motions to Stay the Orders denying his motions pending appeal. Appellant erroneously filed the Motion to Stay in the domestic violence case rather than the child custody case. On May 1, 2003, this Court denied appellant’s Motion to Stay “without prejudice to again seek appropriate relief from this Court upon a showing that (1) appellant requested a protective order or other appropriate relief from the circuit court, and (2) the circuit court erred or abused its discretion in denying appellant’s request.”
 

 [13]
 

 . The court file includes a photocopy of the Notice of Appeal filed on April 17, 2003, and a cashier’s date stamp indicating that the filing fee was paid on June 16, 2003.
 

 [14]
 

 . Those motions were filed on May 16, 2003.
 

 [15]
 

 . On June 30, 2003, appellant filed a second Notice of Appeal, apparently from the June 23rd and June 26th orders denying all three motions and authorizing Mr. Slavin and the bank to submit fee peti
 
 *350
 
 tions. Although docketed in the domestic violence case, there is no other record of this appeal.
 

 [16]
 

 . Appellant was entitled to note an appeal from the April 2, 2003 order, because that order constituted a final and dispositive judgment that denied all of appellant's requests for relief. While it is true that the April 2nd order included a provision that authorized counsel for Mr. Slavin to "submit a petition ... pursuant to Md. Rule 1-341,” if appellant had no right to appeal until a Rule 1-341 order was actually entered, counsel for Mr. Slavin would be able to prevent appellate review by simply not filing the petition authorized by the order at issue.
 

 [17]
 

 . The Notice was filed in the domestic violence case.
 

 [18]
 

 . Maryland Rule 8-201 provides:
 

 (a) By notice of appeal. Except as provided in Rule 8-204, the only method of securing review by the Court of Special Appeals is by the filing of a notice of appeal within the time prescribed in Rule 8-202. The notice shall be filed with the clerk of the lower court.... The clerk ... shall enter the notice on the docket.
 

 (b) Filing fees. At the time of filing a notice of appeal in a civil case ..., an appellant shall deposit the fee prescribed pursuant to [CJ] § 7-102 with the clerk of the lower court....
 

 (c) Transmittal of record. After all required fees have been deposited, the clerk shall transmit the record as provided in Rules 8-412 and
 
 *351
 
 8-413. The fee shall be forwarded with the record to the Clerk of the Court of Special Appeals.
 

 [19]
 

 . Maryland Rule l-322(a) states that "[t]he filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court, except that a judge of that court may accept the filing....” This Court has stated that Rule 1—322(a) "(1) ‘effectually makes the court always open for the filing of papers,' and (2) provides that 'the filing date' is 'the day the judge accepts the paper.’”
 
 In re Vy N.,
 
 131 Md.App. 479, 483, 749 A.2d 247 (2000) (holding that juvenile delinquency petitions were timely filed even though deadline was January 11, 1999, clerk's office closed at 4:30 p.m., the petitions were delivered after 4:30 p.m., and the petitions were not "stamped in” until January 12).
 

 [20]
 

 . C.J. § 7-201 requires that filing fees be paid prior to docketing a case for consideration by the circuit court, allowing for a waiver of those fees in cases of indigency. However, this case was docketed for consideration by the Court of Special Appeals, not the circuit court.
 

 [21]
 

 . "Record (n.)—The official report of the proceedings in a case, including the filed papers, a verbatim transcript of the trial or hearing (if any), and tangible exhibits. See DOCKET.” Black's Law Dictionary 1279 (7th ed.1999). "Docket (n.)—A formal record in which a judge or court clerk briefly notes all the proceedings and filings in a court case.”
 
 Id.
 
 at 495, 749 A.2d 247. "Docket (vb.)—1. To make a brief entry in the docket of the proceedings and filings in a court case <to docket the filing date>.”
 
 Id.
 

 [22]
 

 . Rule 1-323 provides:
 

 The clerk shall not accept for filing any pleading or other paper requiring service, other than an original pleading, unless it is accompanied by an admission or waiver of service or a signed certificate showing the date and manner of making service. A certificate of service is prima facie proof of service.
 

 [23]
 

 . This Court is expressly required to dismiss an appeal under certain circumstances. For example, in
 
 Steiner v. Harding,
 
 88 Md. 343, 346-47, 41 A. 799 (1898), and
 
 Horsey v. Woodward,
 
 124 Md. 361, 368, 93 A. 9 (1914), the courts held that if the record is not transmitted within the time required by what is now Rule 8-412(a), the appeal will be dismissed.
 
 See also Marx v. Reinecke,
 
 142 Md. 342, 344, 120 A. 876 (1923) ("appeal
 
 must
 
 be dismissed if the record is not transmitted within the time named ... [and] this Court has no discretion in the matter”),
 
 appeal dismissed,
 
 270 U.S. 664, 46 S.Ct. 204 (1926);
 
 Presstman v. Fine,
 
 162 Md. 133, 136-37, 159 A. 265 (1932).
 

 The late payment of this filing fee did not interfere with the timely transmission of the record to this Court. Rule 8-412(a) states that "the clerk of the lower court shall transmit the record to the Court of Special Appeals within sixty days after: (1) the date of an order entered pursuant to Rule 8-206(a)(l) that the appeal proceed without a prehearing conference....” Although the Notice was filed on April 17, 2003, on May 8, 2003, the Court of Special Appeals issued an order, pursuant to Maryland Rule 8-206(a)(l), directing that the case proceed without a Prehearing Conference. In accordance with Rule 8-412(a), the record was transmitted to this Court on June 30, 2003, within sixty days of the May 8, 2003 Order.
 

 [24]
 

 .
 
 See
 
 Rule 8--602(a)(2).
 

 [25]
 

 . A question is moot if, at the time it is before the court, there is no longer any existing controversy between the parties, so that there is no
 
 *354
 
 longer any effective remedy which the court can provide.
 
 Attorney General v. A.A. Co. School Bus,
 
 286 Md. 324, 327, 407 A.2d 749 (1979);
 
 State v. Ficker,
 
 266 Md. 500, 506-07, 295 A.2d 231 (1972).
 

 [26]
 

 . A case should not be dismissed as moot if the case “presents 'unresolved issues in matters of important public concern that, if decided, will establish a rule for future conduct,' or the issue presented is ‘capable of repetition, yet evading review.’ ”
 
 Committee for Responsible Dev. on 25th St. v. Mayor & City Council,
 
 137 Md.App. 60, 69, 767 A.2d 906 (2001) (quoting
 
 Stevenson v. Lanham,
 
 127 Md.App. 597, 612, 736 A.2d 363 (1999)).
 

 [27]
 

 . The grant or denial of an injunction lies within the sound discretion of the circuit court and the court's decision will not be disturbed on appeal absent a showing of an abuse of discretion.
 
 Maryland Comm’n on Human Relations v. Downey Communications, Inc.,
 
 110 Md.App.
 
 *356
 
 493, 521, 678 A.2d 55 (1996) (citations omitted).
 
 Price v. Orrison,
 
 261 Md. 8, 10, 273 A.2d 183 (1971). An abuse of discretion is present "where no reasonable person would take the view adopted by the [trial] court.”
 
 Metheny v. State,
 
 359 Md. 576, 604, 755 A.2d 1088 (2000) (quoting
 
 In re Adoption/Guardianship No. 3598,
 
 347 Md. 295, 312, 701 A.2d 110 (1997)). "Thus, where a trial court's ruling is reasonable, even if we believe it might have gone the other way, we will not disturb it on appeal.”
 
 Id.
 

 [28]
 

 . The primary function of a civil subpoena is to compel the attendance of witnesses and the production of documents to formal court proceedings during the pretrial state of the civil case or at trial. "The subpoena power allows the parties to bring before the court all the available information for the determination of controversies before it."
 
 United States
 
 v.
 
 Santiago-Lugo,
 
 904 F.Supp. 43, 46-47 (D.Puerto Rico, 1995)(citing F.R.Civ.P. 45(a)(1)-(3)).
 

 [29]
 

 . "The power of the court to enter a protective order relating to discovery is broad." Niemeyer & Schuett, at 282. Maryland Rule 2-403 permits the circuit court to
 

 enter any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
 

 (1) that the discovery not be had ..., (3) that the discovery may be had only on specified terms and conditions
 

 (5) that certain matters not be inquired into or that the scope of the discovery be limited to certain matters
 

 (8) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way....
 

 [30]
 

 . Md. Rule 2-403 is based in large part on F.R.Civ.P. 26(c).
 
 Tanis v. Crocker,
 
 110 Md.App. 559, 574, 678 A.2d 88 (1996). When interpreting
 
 *359
 
 a Maryland Rule that is similar to a federal rule of Civil Procedure, we may look to federal decisions construing the corresponding federal rule for guidance.
 
 Pleasant v. Pleasant,
 
 97 Md.App. 711, 732, 632 A.2d 202 (1993).
 

 [31]
 

 . If the party against whom discovery is sought makes a timely
 
 motion
 
 for a protective order, the court can examine the relevant documents or information in camera before determining whether a restraining order should issue.
 
 See Kerr v. United States District Court,
 
 426 U.S. 394, 404-06, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). In appropriate cases, opposing counsel should be permitted to participate in such in camera proceedings, so that the judge will have the benefit of adversarial presentation.
 
 In re Halkin,
 
 598 F.2d 176, 194 (C.A.D.C.1979).
 

 [32]
 

 . The District Court ordered a state-court Clerk to comply with a summons issued by the Internal Revenue Service (IRS) for the production of two tapes in the Clerk’s custody recording conversations between officials of petitioner Church of Scientology (Church) and their attorneys. Although the Church filed a timely notice of appeal, its request for a stay of the summons enforcement order was unsuccessful and copies of the tapes were delivered to the IRS while the appeal was pending.
 

 [33]
 

 . Md. Rule 2 -402 sets forth the scope of discovery, providing: Unless otherwise limited by order of the court in accordance with these rules ... fa] party may obtain discovery regarding any matter, not privileged, ... if the matter sought is relevant to the subject matter involved in the action...."
 

 [34]
 

 . Our holding that appellant is entitled to a hearing should not be interpreted as an indication that we have come to the conclusion that appellant is entitled to some form of relief. Nor should our decision in No. 1042 be interpreted as an indication that we have come to the conclusion that appellees are not entitled to the sums of money that they were awarded pursuant to Md. Rule 1-341.
 

 [35]
 

 . At the conclusion of that hearing, an aggrieved party will have a right to appellate review of whatever appealable order is entered by the circuit court.
 

 [36]
 

 . The records marked for identification at the hearing will also be protected by the Maryland Public Information Act, Md.Code (1984, 1999 Repl.Vol., 2003 Supp.) § 10-611,
 
 et seq.,
 
 of the State Government Article. Pursuant to S.G. 10-617(f), when an exhibit that contains confidential financial information has been introduced into evidence (or has been "marked for identification” and is thereby included in the court record), that exhibit is filed under seal in an envelope furnished to the clerks by the Administrative Office of the Courts, and on which the following information is printed:
 

 CONFIDENTIAL INFORMATION THE DOCUMENTS CONTAINED IN THIS ENVELOPE ARE NOT PUBLIC INFORMATION. THIS ENVELOPE SHALL NOT BE
 
 *363
 
 OPENED, AND THE CONTENTS SHALL NOT BE ACCESSED, BY ANY PERSONS OTHER THAN THE COURT, EMPLOYEES OF THE COURT, THE PARTIES TO THIS CASE, OR COUNSEL FOR THE PARTIES TO THIS CASE. SEE ANNOTATED CODE OF MARYLAND, STATE GOVERNMENT ARTICLE, SECTION 10-617(f). ANY PERSON VIOLATING THE PROVISIONS OF THIS SECTION ARE [sic] SUBJECT TO CRIMINAL PENALTIES AS PROVIDED BY LAW.