891 A.2d 1125

**In re SOPHIE S.**

**No. 0203, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Feb. 2, 2006.

92

William E. Nolan (Nancy S. Foster, Public Defender on the brief), Baltimore, for appellant.

C.J. Messerschmidt (J. Joseph Curran, Jr., Attorney General on the brief), Baltimore, for appellee.

Argued before KRAUSER, SHARER and WOODWARD, JJ.

SHARER, J.

In this appeal we are asked to decide whether a juvenile court has jurisdiction to award custody to a formerly non-custodial parent when the Department of Social Services ("the DSS") dismisses a CINA petition without having sustained any of the allegations against the formerly custodial parent.[1] As we shall discuss, *infra*, the DSS has moved to dismiss this appeal on mootness grounds. Despite mootness of the custody issue, we shall reach the merits of appellant's argument and vacate the order of the juvenile court.

## FACTUAL and PROCEDURAL BACKGROUND

Sophie S. was born on September 11, 1993, to Lisa R., appellant, and John S. At the time of the hearing before the Circuit Court for Baltimore County, sitting as a juvenile court, Lisa was living in Richmond, Virginia. John, at that time, was living in North Pole, Alaska, where he was stationed with the U.S. Air Force. Living with John were his wife and Sophie's older sister, Brianna, who is Lisa's child as well. Lisa is also the mother of a son, Danny R., who is not John's child.

---

1. In her brief, appellant asks:

> Upon granting the dismissal of the CINA petition at the request of the Baltimore County Department of Social Services, and without sustaining any of the allegations within the CINA petition against appellant, did the juvenile court exceed its jurisdiction and improperly change the custody of Sophie from appellant to Sophie's father?

At some point, Lisa moved from Baltimore County to Richmond, allegedly abandoning both Danny and Sophie. Danny, who is now over the age of 18, was taken in by the family of a school friend.[2] Similarly, Sophie was provided a home by the family of a school friend. At the time of the hearing, it was the wish of both appellant and Sophie that Sophie continue to reside with the friend's family. In this appeal, we have not been provided with Sophie's position regarding her custody.[3]

The involvement of the DSS was triggered by Danny's having been left alone in a home with no furnishings, no food, and no money. In the course of its investigation, the DSS became aware of Sophie's situation as well. The investigation resulted in the filing of a petition alleging both Danny and Sophie to be CINA.

When John learned of Sophie's situation, and the involvement of the DSS, he moved promptly to file a complaint for change of custody in the Circuit Court for Baltimore County.

---

**2.** The involved parties consented to a finding that Danny was a CINA and the court authorized his continued living arrangement with the family that had taken him in originally. At the time of the hearing, Danny was nearly 18 years old.

**3.** We are perplexed at the failure of Sophie's counsel to either make her a party to this appeal or to have her position asserted. A child who is the subject of a CINA petition is a "party" and is entitled to the assistance of counsel "at every stage of any proceeding," which includes appeals. *See* Cts. & Jud. Proc. § 3–801(a), 3–813(a). A child's counsel should advocate a position consistent with the child's wishes in the appeal if the child has considered judgment; or, if the child does not have considered judgment, a position that counsel believes to be in the child's best interest. *See* Md. Rules of Prof'l Conduct app. (2006), Guidelines of Advocacy for Attorneys Representing Children in CINA and Related TPR and Adoption Proceedings, Guidelines A, B1, and B2.

In this case, counsel for Sophie has not filed a brief or even a line advising us of Sophie's position in this appeal. Nor was Sophie's counsel present at oral argument to provide us this information or to answer questions from the panel.

The scope of appropriate appellate representation of a child who is the subject of a CINA petition must depend on the particular circumstances of each case. *See id.* at Guideline E3b. However, we believe that information regarding a child's position in an appeal is essential, because our focus, as is that of the juvenile court, is the child's best interest.

He sought *pendente lite* custody of Sophie and requested an emergency hearing, which was conducted by the court on January 10, 2005. By order of the circuit court of January 11, 2005, John's petition for *ex parte, pendente lite* relief was denied, but the court ordered that "in light of the related CINA proceeding pending in this Court, neither party shall remove Sophie [S.] from the State of Maryland, subject to further Order of this Court." As a result, custody effectively remained with Lisa, although Sophie was not, at that time, physically living with her mother.

The CINA petition came on for hearing in the juvenile court on February 18, 2005. Briefly stated, the juvenile court, upon motion of the DSS, dismissed the CINA petition and ordered Sophie to the custody of her father, John. That action gave rise to Lisa's appeal.

Before addressing the merits of the appeal, we shall first take up appellee's motion to dismiss the appeal on mootness grounds.

### Mootness

The facts supporting the DSS's motion to dismiss are that, subsequent to the order of the juvenile court of February 18, 2005, John's still-pending custody suit was taken up by the equity court. Testimony was taken on September 12, 2005, before a Family Law Master of the circuit court, whose recommended order provided:

Plaintiff [John] was present with counsel,[4] testimony [was] taken and exhibits [were] presented, and finding that a material change in circumstances exists to warrant a modification of custody, it is ...

ORDERED that John [S.] be and hereby is granted sole custody of the two minor children of the parties; namely

---

4. There is nothing in the record before us from which we can determine whether Lisa was present at the custody hearing before the master, nor do we have the record of the equity proceeding. We can, however, draw an inference from the master's reference to John's presence that Lisa was not present.

Brianna Michelle [S.] and Sophie Jean [S.], with reasonable visitation to Lisa Ann [R.]. . . .

The proposed order was adopted by the circuit court, signed by a judge of that court on September 28, 2005, and enrolled as a judgment on October 3, 2005. No appeal was taken from that judgment. Hence, appellee posits, issues relating to Sophie's custody are moot.

 It is well-settled Maryland law that " '[a] question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide.' " *Hill v. Scartascini*, 134 Md.App. 1, 4, 758 A.2d 1087 (2000) (quoting Attorney *Gen. v. Anne Arundel County Sch. Bus Contr's. Assn.*, 286 Md. 324, 327, 407 A.2d 749 (1979)). The essence of the rule is that appellate courts "do not sit to give opinions on abstract propositions or moot questions; appeals which present nothing else for decision are dismissed as a matter of course." *In re Riddlemoser*, 317 Md. 496, 502, 564 A.2d 812 (1989). Generally, moot questions will be dismissed "without expressing [appellate] views on the merits of the controversy." *Mercy Hosp., Inc. v. Jackson*, 306 Md. 556, 562, 510 A.2d 562 (1986).

 When, however, " 'the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest [and requires] a departure from the general rule and practice of not deciding academic questions[,]' " the appellate court is justified in ruling on the issue. *Bond v. Slavin*, 157 Md.App. 340, 354, 851 A.2d 598 (2004)(quoting *Mercy Hosp., supra*, 306 Md. at 562–63, 510 A.2d 562). The Court of Appeals explained the concept of an expression of the Court's views in a moot case in greater detail in *J.L. Matthews, Inc. v. Maryland–National Capital Park & Planning Comm'n*, 368 Md. 71, 96–97, 792 A.2d 288 (2002), saying that mootness will be overlooked when

"the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest. . . . If the public interest clearly will be hurt if the

question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised by a question which has become moot, particularly if all these factors concur with sufficient weight."

(quoting *Lloyd v. Bd. of Supervisors of Elections*, 206 Md. 36, 43, 111 A.2d 379 (1954)); *see also In Re Justin D.*, 357 Md. 431, 444–45, 745 A.2d 408 (2000).

▮ In view of the later final, and unappealed, custody order of the circuit court, the order of the juvenile court is moot.[5] Nonetheless, as we consider the record of the proceedings in the juvenile court, and the question presented in this appeal, we are satisfied that we have before us an issue that is likely to recur. We reach that conclusion because this Court has been presented with a similar issue in other recent appeals,[6] and because the effect of our opinion will serve the interests of masters and judges sitting in juvenile courts in the various subdivisions.

Moreover, the issue is one that involves "a relationship between government and its citizens" and is significant because it involves, at the same time, the best interests of allegedly neglected children and the inherent rights of natural parents.

### The Juvenile Court Proceedings

---

**5.** On purely procedural grounds, the issue may not be moot. We were advised by counsel, at oral argument, that the juvenile court case involving Sophie remains open on the court's docket. It seems to us, however, that dismissal of the petition by the DSS and entry of an order by the juvenile court effectively terminates the case, even if not formally closed of record.

**6.** *See, e.g., In Re: Aleah J.*, No. 0259, Sept. Term, 2005 (filed December 9, 2005).

At the juvenile court hearing, all parties were represented by counsel, including Sophie. At the outset, counsel for the DSS advised the court that it intended to seek an adjudication of CINA as to Danny, dismiss the petition as to Sophie, and grant John custody of Sophie. Thereafter, the hearing was taken up with proffers from counsel for all parties as to what might, or might not, be proved, and assertions of the wishes of their respective clients.

Lisa always denied the allegations of the petition and was prepared to defend. Sophie, it was proffered, would testify that the allegations of her mother's neglect were untrue. As we have noted, Sophie wished to remain with her friend's family until the end of the school year and then return to her mother's custody. John, of course, asserted that, as a parent against whom there were no allegations of unfitness, he was presumptively fit and should be granted custody of Sophie.

After hearing counsel preliminarily, the court observed:

Well, I'm in a complete quandary about what to do with these cases because if Sophie is here today and she says she wants to live with her mom, just based on what I've read and I haven't heard the testimony, I think [the mother is] completely and totally unfit to have either one of these children in her custody, completely unfit and Mr. [S] is here, willing to take custody of Sophie. He's the father. He would certainly be preferred as a custodian of the child over someone who is a stranger. That's the law.

The hearing concluded with the following exchange among counsel and the court:

[THE COURT]: All right. Now, we're back on the matter of Sophie [S.], case number I04–501. How are we going to proceed?

[DSS COUNSEL]: Well, as far as the agency is concerned, your Honor, we would be dismissing the petition because under *Russell G.* we have an appropriate care provider and we would make the recommendation and ask your Honor to award custody to the father.

[THE COURT]: Is there any objection to that? What's the objection?

[COUNSEL FOR SOPHIE]: Your Honor, Sophie would object to that. She does not want to go with her father and she wants to have custody go back to her mother.

[THE COURT]: Mr. [Counsel for Lisa]?

[COUNSEL FOR LISA]: Again, your Honor, renew my argument that [3–819] [7] of Courts and Judicial Proceedings, Subsection [ (e)], if the Department is withdrawing their petition then facts are not sustained against any parent and, therefore, it would be inappropriate for the Court to make a custody decision. What my suggestion would be is if the Court would feel more comfortable because Ms. [R.] is not planning on taking Sophie anywhere. She wants Sophie to continue with the [U family], pass an Order controlling conduct, let the parties file in ...

[THE COURT]: No, no, no. Let's see. If I commit Sophie to the agency for placement, can, would the agency have the authority to then place Sophie with her father?

[DSS COUNSEL]: We'd have to do, we, we'd have to do a formal interstate (inaudible). We got Alaska to do an informal check, gave us a report that everything is fine and so on. We could place the child with the father in Alaska pursuant to the Interstate Compact but that couldn't occur today.

[THE COURT]: So she would stay with the [U. family] (inaudible), correct?

[DSS COUNSEL]: Well, if the [U. family] were appropriate, we did a check with regards to them.

[THE COURT]: They haven't been checked either?

[DSS COUNSEL]: Well, they've been checked but ...

[THE COURT]: I thought so.

---

**7.** Throughout the transcript, statutory references are either incomplete or erroneous. We have corrected the citations for appropriate reference.

[DSS COUNSEL]: ... they would be in, in a, as foster parents, if that's what they're going to be, there's a, there's a procedure for foster parents since they're non-related.

[THE COURT]: Right.

[DSS COUNSEL]: That we would have to undergo but the child could be placed with them pursuant to a commitment.

[THE COURT]: So if I find she's a child in need of assistance and commit her to the agency, then the agency would just make a placement, is that right? To an approved foster home?

[DSS COUNSEL]: That's correct, your Honor.

[COUNSEL FOR JOHN]: Your Honor, if I might. (Inaudible) will allow you to determine custody in the absence of (inaudible), however, [3–819(e)] would certainly, I mean, if we go ahead with the hearing, if there are allegations sustained against only one of the parents ...

[THE COURT]: I know, you told me that before.

[COUNSEL FOR JOHN]: (inaudible) [3–819(C)(2)] would allow you to determine custody, visitation, support or paternity in accordance with [3–819] (inaudible) and none of this would preclude you from awarding custody to my client in the absence of a CINA finding other than you'd have to do the CINA finding for the [3–819(e)] to apply you have to actually have the, the finding.

[THE COURT]: Right.

[COUNSEL FOR JOHN]: Even without that, I believe the statute allows you to make a custody determination although it's discretionary.

[DSS COUNSEL]: If I may, your Honor?

[THE COURT]: Um hm.

[DSS COUNSEL]: The parties are correct only in part. The entire purpose of [3–819(e)] is to expand the Russell G. decision.

[THE COURT]: Right.

[DSS COUNSEL]: Which basically said by the Court of Appeals that you can't make a CINA determination unless

both parents are CINA. The case did not, however, go the logical step and address the fact that in some cases that would mean that without a CINA finding, the child would go back to the offensive parent.

[THE COURT]: That wouldn't make any sense at all.

[DSS COUNSEL]: Exactly. *Russell G.* was never meant to be a sword which in effect it is. So the legislature drafted the last clause at [3–819] and codified *Russell G.* but added the provision that if the Court so chooses, it's permissive, the Court can make a custody determination for either the father or the mother, presumably the fit parent. This is not as Mr. Wardlaw indicates, a final custody because it's always subject to ...

[THE COURT]: Of course.

[DSS COUNSEL]: And it is not as, it does not require a CINA finding, in fact, quite the opposite. You cannot make a CINA finding ...

[THE COURT]: Right.

[DSS COUNSEL]: So it would basically be an out to address the *Russell G.* quandary. The agency is in a position where while we have problems with regards to the explanation that the mother made with respect to the circumstances of her leaving the child in the care of the other people when she went to Virginia, we are not allowed to proceed with what we would be asking for in a vacuum which would be a CINA finding and commitment because we have an appropriate care provider that we've checked out as appropriate. So the agency's position is that the father is appropriate, the mother, the allegations of the mother, that are indicated against the mother are true and would support a CINA finding but that we haven't dismissed the petition and recommend that the Court (inaudible) to the father. So that's the way [3–819(e)] actually is meant to function as well as [3–819(C)(2)].

[THE COURT]: Well' I've done [3–819], whatever letter that is, [ (e)], dispositions many times.

[DSS COUNSEL]: Absolutely and we have been in a position to request that and, but for the father's presence, we would be asking for CINA and a commitment.

[THE COURT]: I understand. Mr. Lisa's [counsel]?

[CLUNSEL FOR LISA]: Well, your Honor, I'm just going by the plain meaning of what the language in the statute says and despite what [DSS Counsel] is arguing, the statute says there has to be findings against one of the parents. The Department has withdrawn its petition meaning it is no longer proceeding with the case.

[THE COURT]: What happens is I award custody and guardianship to the father and then I dismiss the case. Isn't that the order?

[DSS COUNSEL]: Yes, your Honor, because the language states prior to dismissal and, indeed, there may be a situation here . . .

[THE COURT]: I was right . . .

[DSS COUNSEL]: . . . without making judgments . . .

[THE COURT]: I write it up very carefully when I do those to make certain that if I award custody and guardianship, that I take that step and then I dismiss the case.

[DSS COUNSEL]: And it's entirely possible, in a vacuum, [y]our Honor, not applying it to this case necessarily that both parents could, in the eyes of the Court, be appropriate under *Russell G.* and the same circumstances would apply.

[THE COURT]: Right.

[DSS COUNSEL]: So it does not necessarily mean that a parent is inappropriate. The agency, however, because of the father's situation would make that recommendation to the Court which is not mandatory for the Court to make a decision but is permissive.

\* \* \*

[COUNSEL FOR LISA]: Your Honor, Ms. [R.] would also like you to take into consideration too that this is the first time ever any kind of allegation has been made against her,

any kind of case that's been brought for any type of abuse or neglect.

[COUNSEL FOR SOPHIE]: And, your Honor, Sophie would deny any, any abuse or neglect has ever occurred. She would state that she has not lived with her father since she was very young when the family did not continue to be together and he left and that she last visited him before the January '05 Court hearing and she said two years ago and he lived in California and they have sporadic phone contact and those phone calls were initiated by her. She does not feel she has a good enough relationship and she has a very good relationship with her mother.

[DSS COUNSEL]: Your Honor, in light of Mr. [Counsel for Lisa]'s statement, the agency has documentation that indicates that the mother was found guilty of child abuse in North Carolina and went to trial and was found guilty with probation.

[THE COURT]: Right. She was criminally convicted of chid abuse, is that right?

[DSS COUNSEL]: Yes, [y]our Honor.

[THE COURT]: That was the allegation and conviction for beating and choking John [S.'s] daughter, Jody [S.], correct?

[DSS COUNSEL]: That is, your Honor.

[THE COURT]: Um hm.

[DSS COUNSEL]: We have documentation from Yanslo County Department of Social Services (inaudible).

[THE COURT]: The Department also investigated Mr. [B.] who is the man with whom Ms. [R.] lives, is that correct? And the investigation revealed to the Department that Mr. [B.] has a history of involvement with the Chesterfield and Colonial Heights Department of Social Services with regard to neglect and abuse of his biological children while not in his care, is that true?

[DSS CASE WORKER]: He has a number of neglect and abuse investigations in Virginia Beach.

[THE COURT]: And, and abuse and neglect were indicated or were they just investigations?

[DSS CASE WORKER]: They were substantiated, a number of them were adjudicated.

[THE COURT]: Okay.

[COUNSEL FOR LISA]: I have not seen any proof of that, [y]our Honor, and my client says that's not her understanding.

Ultimately, the court made the following determination:

[THE COURT]: This case, this case is a real puzzle for me because Ms. [R.] now lives in Richmond, Virginia, Sophie is here living with people who are completely unrelated to her and we have a father who is here ready, willing and able to take this child. I believe that of the two parents, he is the better parent at this time based upon, particularly based upon the criminal conviction of Ms. [R.] down in North Carolina. For that reason and for all the reasons that I've stated, I order the custody and guardianship of Sophie [S.] born 9/11/93 is awarded to John [S.]. Ms. [R.] is ordered to contribute generally to the support and maintenance of their minor child. Any kind of child support Orders currently requiring Mr. [S.] to pay child support to Ms. [R.] are terminated. Whatever I have to sign to do that. The mother's visitation with Sophie will be as agreed between the parties. Based upon my award of custody and guardianship, the CINA proceeding is hereby terminated.

Appellant argues that the juvenile court erred in three ways:

First, the juvenile court did not have jurisdiction to address the terms of custody. Second, the juvenile court was not permitted to hold what amounted to a disposition hearing after dismissing the CINA petition during the adjudicatory hearing. Third, even assuming the juvenile court had the authority to award custody, the juvenile court failed to consider the common law factors for determining the best interest of the child.

Because appellant's first and second arguments are essentially the same, we shall discuss them as one. In view of our disposition, we need not discuss whether the court committed

error by failing to precisely discuss the so-called Sanders factors.[8]

The instant case implicates this Court's opinion in *In re: Russell G.*, 108 Md.App. 366, 380, 672 A.2d 109 (1996), wherein we held that a juvenile court could not adjudicate a child a CINA if there was one parent who was able and willing to provide care. For the purpose of its decision in the instant case, the juvenile court presumed that Lisa was unfit and thus unable to provide care for Sophie, and that John was a fit and proper person to assume her care and custody.

As a result of *In re: Russell G.*, the General Assembly, in 2001, added present subsection (e) to § 3–819 of the Courts and Judicial Proceedings Article of the Maryland Code, providing:

(e) *Allegations sustained against only one parent.*—If the allegations in the petition are sustained against only one parent of a child, and there is another parent available who is able and willing to care for the child, the court may not find that the child is a child in need of assistance, but, before dismissing the case, the court may award custody to the other parent.[9]

Central to our inquiry is the phrase *"if the allegations in the petition are sustained against only one parent."* As we consider the implication of *In re Russell G.* and the resulting legislative enactment of § 3–819(e), it is clear that in a particular circumstance a juvenile court may award custody to a parent against whom allegations have not been sustained. Thereafter, the court may dismiss the petition without having made an adjudication of CINA. The court, however, must find that the allegations have been sustained as to the other

---

**8.** In *Montgomery County Dep't. of Soc. Servs. v. Sanders*, 38 Md.App. 406, 420, 381 A.2d 1154 (1977), then Chief Judge Gilbert set forth ten non-exclusive factors to be considered by trial courts in the determination of child custody disputes.

**9.** This substantive provision was originally contained in subsection (d), but was redesignated as subsection (e) in 2002.

parent. In this case, that one essential element of the process was omitted—the juvenile court **did not** find and articulate that the allegations of neglect had been sustained against Lisa before granting custody to John and dismissing the CINA petition.

From our experience, we know that CINA cases are often presented to masters and judges in juvenile court in a posture similar, if not identical, to the case at hand. It is not unusual for the court to be presented with a *Russell G.* situation—one fit parent and one unfit parent. Family Law § 3–819(e) facilitates the court's ability to make a disposition short of foster care or other placement. But, the court **must,** before granting custody and dismissing the petition, find and articulate that the allegations of the petition have been sustained as to one parent.

**ORDER OF THE CIRCUIT COURT FOR BALTIMORE COUNTY, SITTING AS A JUVENILE COURT, OF FEBRUARY 18, 2005, IS VACATED; COSTS ASSESSED TO APPELLEE.**