602 A.2d 191

**DIRECTOR OF FINANCE OF BALTIMORE CITY**

v.

**Keith HARRIS.**

No. 736, Sept. Term, 1991.

Court of Special Appeals of Maryland.

Feb. 28, 1992.

Neal M. Janey, City Sol. and Burton H. Levin, Asst. City Sol. of Baltimore City, Baltimore, for appellant.

Paul R. Kramer, Baltimore, for appellee.

Argued before WILNER, C.J., and CATHELL and MOTZ, JJ.

WILNER, Chief Judge.

The Director of Finance of Baltimore City appeals from an order of the Circuit Court for Baltimore City striking an enrolled judgment entered in a forfeiture action. We shall vacate that order.

The seeds of this controversy were sown on January 9, 1989, when appellee, Keith Harris, was arrested in Baltimore City and charged with certain drug offenses. At the time of his arrest, the police seized $6,052 in cash from him. On March 28, 1989, the Director, through the City Solicitor, filed a complaint seeking forfeiture of the money on the ground that it was used or intended for use in connection with the illegal manufacture, distribution, or possession of controlled dangerous substances or was traceable to something of value furnished in exchange for such substances. *See* Md.Ann.Code art. 27, § 297(b)(6) and (10). For whatever reason, it took more than a year to effect service on Harris. The complaint was eventually delivered to him on May 14, 1990, at a Federal prison in Danbury, Connecticut, where he had taken up residence as a guest of the United States Government. Under Md.Rule 2–321(b)(1), Harris had 60 days from that date—until July 13, 1990—to file an answer. He failed to do so.

On July 17, 1990, having received no response to the complaint, the Director moved for an Order of Default; such an Order was entered on July 23. The next day, the clerk sent notice of the Order to Harris at the Danbury prison, advising him that he had 30 days within which to move to vacate the Order.

On August 13, 1990, the clerk of the Circuit Court received a *pro se* response from Harris seeking the return of the money as well as certain other items he claimed were taken from him and from his mother, and asking that, if the Director failed to return his "belongings" to his mother, the clerk send to him "Civil Suit Forms to be filled out and filed against the Director of Finance, for $3,000,000 in damages." The response appeared to be dated August 3, 1990. It contained the following Certificate of Service:

> "I, Keith Harris, claimant of the moeny [*sic*] mentioned herein hereby certify that I mailed this motion to my Mother Mrs. Denise Young of Baltimore Maryland on this *27th*, day of July 1990 and asked her to bring this letter by hand to the Clerk's Office of this Court for adequate relief."

Although it is not clear from the record, it seems apparent from this certificate that neither the Director of Finance nor his lawyer, the City Solicitor, was actually served with Harris's motion. The clerk, for her part, regarded the certificate as improper and therefore refused to file the motion. Instead, she returned the paper to Harris, informing him that there was an "[i]mproper certification of mailing/service." We assume that, in doing so, she acted pursuant to Md.Rule 1–323, which provides:

> "The clerk shall not accept for filing any pleading or other paper requiring service, other than an original pleading, unless it is accompanied by an admission or waiver of service or a signed certificate showing the date and manner of making service. A certificate of service is prima facie proof of service."

When informed that the clerk had not accepted his motion, Harris returned it with another Certificate of Service. The motion was received, and filed, by the clerk on August 31, 1990, which was 39 days after entry of the Order of Default.[1] Meanwhile, the Director, having received no response within 30 days after entry of the Order of Default, moved for a default judgment, which the court entered on August 24, 1990.

On February 6, 1991, with the assistance this time of a lawyer, Harris moved to set aside the default judgment. In that motion he asserted, first, that his failure to file a timely answer to the complaint was due to his incarceration and his proceeding *pro se.* He did not elaborate on why either of those conditions precluded him from filing a timely answer. He next contended that the initial filing should have been accepted and therefore regarded as timely. Because, as he put it, "certification of service/mailing is an administerial procedure of the courts which serves to simply notify the opposing party of the pendency of the action, an improper or insufficient certification should not nullify the filing date of August 13, 1990." Finally, he claimed that he was prepared to show that the money seized from him was not from illicit transactions but instead represented "proceeds from the settlement of a personal injury lawsuit and a gift from his parents." He offered no details in support of that proffer.

Although Harris requested a hearing on his motion, it does not appear that one was held. Nor does it appear that the Director filed an answer to the motion, although a copy was served on the City Solicitor. On March 18, 1991, the

---

1. We note that the Certificate of Service attached to the motion as refiled attests that Harris had mailed a copy of it "to the District Attorney's Office of this Court," and, to assure receipt, that he had asked his mother to hand-deliver a copy of it "to the District Attorney's Office." The clerk obviously had no problem with this certificate, even though the proper person to be served was the City Solicitor, not the nonexistent District Attorney. It is not clear from the record whether, or when, a copy of the motion was actually sent or delivered to the City Solicitor.

court entered a brief order granting the motion to set aside the default judgment, assigning no reasons for its decision. This appeal followed, the Director arguing that the court erred in setting aside the enrolled judgment in the absence of any allegation or showing of fraud, mistake, or irregularity.

The entry of default judgments is governed by Md.Rule 2–613. If, as here, the defendant fails to file a timely response to a complaint, the court, on motion of the plaintiff, is directed to enter an order of default. Notice of that order must be given to the plaintiff, advising him as well that he may file a motion to vacate the order within 30 days. That notice was given to Harris. Section (e) of the Rule provides that if a timely motion to vacate is not filed, the court may enter a judgment by default "that includes a determination as to liability and all relief sought" if it is satisfied that it has jurisdiction and that the required notice was given. Section (f) states that a default judgment entered in compliance with the Rule is not subject to the discretionary revisory power of the court under Md.Rule 2–535 (a), and thus may be stricken or revised only upon a showing of fraud, mistake, or irregularity in conformance with Md.Rule 2–535(b).

In examining what occurred here, we need to consider first whether the clerk was wrong in refusing to accept Harris's initial filing, for it was her decision not to file the motion received on August 13 that led to the second default—the failure to move to vacate the Order of Default within 30 days.

The only authority that a clerk has to refuse to accept and file a paper presented for filing is that contained in Md.Rule 1–323. As we noted, that Rule directs the clerk not to accept a paper requiring service "unless it is accompanied by … a signed certificate showing the date and manner of making service."

Rule 1–323 is derived ultimately from Rule 1(a)(2), Part Two, V, of the General Rules of Practice and Procedure,

adopted by the Court of Appeals and approved by the General Assembly pursuant to 1939 Md.Laws, ch. 719, § 35A. Rule 1(a)(2) provided, in relevant part, that a paper "shall not be received and filed by the clerk of the court unless accompanied by an admission or proof of service of a copy thereof *upon the opposite party or his attorney of record* in accordance with this rule." (Emphasis added.) Other parts of the Rule prescribed how service was to be made. That Rule was carried over into the Maryland Rules of Procedure as Rule 306 a.2., which stated that "[t]he clerk shall not accept or file any paper requiring service other than an original pleading unless it is accompanied by an admission or proof of service of a copy thereof *upon the opposite party, or his attorney of record.*" (Emphasis added.)

Until the 1984 revision of the Maryland Rules, the Rule remained in that form. The certificate had to show service of the paper on the opposite party or that party's attorney. If it did not, the clerk was obliged not to accept the paper. Another section of Rule 306, § d, dealing with the *effect* of a certificate of service, provided that the certificate "showing the date thereof and the manner of making the same in accordance with this Rule, shall be *prima facie* proof of such service." In adopting current Rule 1–323, the Court combined those two sections into one. The result is the current language obliging the clerk to reject a paper unless it is accompanied by a certificate "showing the date and manner of making service." This is followed by the statement that a certificate of service is prima facie proof of service.

It is evident, of course, that in revising the Rule, the Rules Committee and the Court omitted the language of the former Rule requiring that the certificate show that the paper was served on the opposite party or its attorney. The minutes of the Rules Committee do not reveal the reason for this omission, but it may have been a recognition that the function of the certificate was merely to document compliance with the underlying requirement of service and

that that requirement extended to *all* parties in the action and not just "opposite" parties. Md.Rule 1–321(a) directs that papers be served "upon each of the parties" or their attorneys. Whatever the reason, the omission, we think, has significance.

In regard to receiving and filing papers, as in the making of docket entries, a clerk "acts only as a ministerial officer of the Court." *Corey v. Carback,* 201 Md. 389, 402, 94 A.2d 629 (1953). The law requires the clerk, when requested in writing to do so, to "record any paper filed with his office and required by law to be recorded...." Md.Ann.Code Cts. & Jud.Proc. art., § 2–201(a)(3). Thus, as stated in *McCray v. Maryland,* 456 F.2d 1, 4 (4th Cir.1972), "[c]lerical duties are generally classified as ministerial ... and the act of filing papers with the court is as ministerial and inflexibly mandatory as any of the clerk's responsibilities." Except as otherwise expressly provided by law, therefore, the clerk has no discretion in the matter and no right to make a judicial determination of whether the paper complies with the Rules or ought to be filed. If the paper has not been presented timely or if it suffers from some other deficiency, it is subject to being stricken by the court, usually upon motion of a party objecting to the paper, but so long as it is properly presented, the clerk must accept and file it. The only exception that we know of to that requirement, as we said, is the direction in Md.Rule 1–323 not to accept a paper that lacks an admission or waiver of service or a certificate showing the date and manner of service.

Under the old Rule, the clerk may have had some obligation to determine whether the certificate actually showed service on the "opposite party." But, as noted, that obligation, if it ever did exist, has been eliminated. The clerk has neither the time, nor, in complex cases with multiple parties, the competence to determine whether a certificate of service is either accurate or complete. He or she cannot be expected to read through the file to deter-

mine the names and addresses of all parties entitled to service and then compare that information with what is stated in the certificate. The obligation of the clerk under the current Rule is simply to assure that there is, in fact, an admission, a waiver, or a certificate showing the date and manner of service. If such a certificate is attached to the paper, the clerk must file the paper, leaving it then to the parties or the court to deal with any deficiency.

The paper received by the clerk on August 13 contained a certificate of service showing the date and manner of delivering the paper. Indeed, the certificate was accurate; it reflected precisely what Harris did. He mailed the motion to his mother. The defect, then, was not with the certificate but with the service itself. Harris complied with Rule 1–323; what he failed to comply with was Rule 1–321, requiring service on the City Solicitor.

Two conclusions flow from this. First, the clerk was in error in refusing to accept and file the paper she received on August 13. That error certainly constitutes a failure of the clerk "to perform a duty required by statute or rule," thereby invoking the revisory power of the court pursuant to Md.Ann.Code Cts. & Jud.Proc. art., § 6–408, and amounts as well to an "irregularity" within the meaning of Rule 2–535 (b)—the not doing of that, in the conduct of a suit at law, which, conformable to the practice of the court, ought to have been done. *Weitz v. MacKenzie,* 273 Md. 628, 631, 331 A.2d 291 (1975). The existence of an irregularity, however, either under the statute or the Rule, does not, of itself, entitle Harris to have the judgment stricken. It simply allows him to invoke the revisory power of the court that otherwise would be unavailable.

In order to obtain relief under Rule 2–535(b) or § 6–408, Harris must show that he is acting in good faith and with diligence and that he has a meritorious defense to the complaint. *Shaw v. Adams,* 263 Md. 294, 296, 283 A.2d 390 (1971). In the circumstances here, Harris must present a satisfactory explanation of why, on at least the first occasion that he sent his motion to the clerk for filing and

possibly on the second as well, he failed to serve the City Solicitor with a copy of it, in clear violation of Rule 1–321(a). He must present a satisfactory explanation of why he waited five months before filing his motion to strike the default judgment. He must offer a satisfactory explanation, beyond merely stating that he was in prison and was acting *pro se*, why he failed to answer the initial complaint within the time allowed. And he must demonstrate, beyond bald allegations, that he has a meritorious defense to the complaint. He has, to this point, done none of these things, and because he has not, the court erred in striking the enrolled judgment.

In the interest of justice—in order to afford Harris one last opportunity to comply with the prerequisites for obtaining relief under Rule 2–535(b)—we shall, instead of reversing the order striking the enrolled judgment, vacate that order and remand the case for further proceedings. If Harris can satisfy the prerequisites, the court may, based upon the irregularity noted, again strike the judgment; if not, the court must deny his motion.

ORDER STRIKING DEFAULT JUDGMENT VACATED; CASE REMANDED TO CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS; APPELLEE TO PAY THE COSTS.