*Phlonda Peay v. Reginald Barnett*
Case No. 1726, September Term, 2016

**HEADNOTES**

**DEFECTS IN SERVICE OF PROCESS – "MISTAKE" UNDER MARYLAND RULE 2-535(b)**

A "mistake" under Md. Rule 2-535(b) refers only to a "jurisdictional mistake," which includes lack of personal jurisdiction arising out of a defect in service of process.

**"MISTAKE" UNDER MARYLAND RULE 2-535(b) – "DILIGENCE AND GOOD FAITH" TEST**

The equitable considerations of "diligence and good faith," do not apply to "jurisdictional mistakes" under Md. Rule 2-535(b) that would render a default judgment void. Once the circuit court determines that the issuing court exceeded either its *in personam* jurisdiction or its subject matter jurisdiction, the court must find the prior judgment invalid.

**PERSONAL JURISDICTION – SERVICE OF PROCESS -- WAIVER**

To determine whether a defaulting defendant waived his or her right to challenge the circuit court's *in personam* jurisdiction, the circuit court should consider (1) whether the plaintiff made a good faith effort to serve the defendant and whether the plaintiff reasonably should have known that service would be challenged; (2) whether the defaulting defendant had actual, sufficient notice of the proceedings and his or her opportunity to defend prior to the court's final judgment; and (3) whether the defaulting defendant's inaction after gaining such knowledge rendered the plaintiff unable to prosecute his or her case.

Circuit Court for Baltimore City
Case No. 24-C-08-001241

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1726

September Term, 2016

_____

PHLONDA PEAY

v.

REGINALD BARNETT

_____

Eyler, Deborah S.,
Berger,
Zarnoch, Robert A.
(Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Zarnoch, J.

_____

Filed: March 29, 2018

On its surface, this case seems to involve a simple question -- whether the Circuit Court for Baltimore City correctly denied a defendant's motion to vacate a default judgment against her where there was a defect in service of process, but where she likely had actual notice of the proceedings and did not diligently challenge the judgment for more than six years.  Logic would suggest an obvious yes.  However, relevant caselaw blocks an easy answer here.  For the U.S. Supreme Court has said that "[a] defendant is always free to ignore judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding*." Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinée*, 456 U.S. 694, 706 (1982).  And the Court of Appeals of Maryland, relying on the proposition that there can be no valid proceeding against a defendant in the absence of proper service, has allowed a challenge four years after entry of a default judgment and six years after actual knowledge of the litigation by the defaulting party.  *See Little v. Miller*, 220 Md. 309 (1959).  Further complicating this increasingly complicated issue is a trend in the caselaw -- particularly in federal courts -- making it easier to find that a defaulting defendant has waived personal jurisdiction by his or her conduct.  *See Ins. Corp. of Ireland*, *supra*, 456 U.S. at 703-05.   In reliance upon this authority, we conclude that in this case, the circuit court, rather than focusing on post-judgment diligence, should have considered whether the appellant, Phlonda Peay, has waived personal jurisdiction.   Thus, we reverse and remand this case for further proceedings.

**BACKGROUND AND PROCEDURAL HISTORY**

In 2006, appellee Reginald Barnett, who was an inmate at the Maryland Correctional Adjustment Center ("Super Max") was seriously injured after several officers entered his cell and shackled him. Barnett was taken to the hospital in Super Max, and then transported to an outside hospital to have his wounds sutured, and ultimately, was transferred to a different prison facility.[1] On February 19, 2008, Barnett filed a complaint in the Circuit Court for Baltimore City against several officers whom Barnett alleged were involved in the incident.[2] The defendants included appellant Phlonda Peay, who was a captain at Super Max at the time of Barnett's injuries. Although Barnett alleged that only some of the officers were directly involved, he asserted that Peay, along with three others, approved and supervised the other officers' conduct.

---

[1]	Before a lawsuit was filed, a number of actions occurred on the administrative front. A departmental Internal Investigation Unit investigated the incident as an "Excessive Use of Force" complaint filed by Barnett. Five employees were named, but not Peay. On June 20, 2006, the unit found that four employees used excessive force and that Officer Owen failed to stop unnecessary use of force. As a result, the four employees were terminated and Lt. Owen was demoted to sergeant. On August 28, 2006, Barnett filed a complaint with the Inmate Grievance Commission. That complaint was dismissed because of Barnett's failure to seek relief through the "Administrative Remedy Procedure" of the Department of Correction, a decision not challenged by Barnett.

[2]	Barnett's complaint named as defendants the State of Maryland, the Department of Public Safety and Correctional Services (DPSCS), the Division of Correction, six named officers at Super Max, including Peay, as well as four unnamed officers. In total, Barnett named thirteen defendants. The complaint recited that the defendants were given timely notice pursuant to the Maryland Tort Claims Act, Md. Code (1984, 2017 Repl. Vol.), State Gov't Art., § 12-106. The Attorney General's office accepted service for the State and the agency but apparently was not asked to accept service for the "officers" under Md. Rule 2-124(k).

2

According to the docket, Peay was originally listed as "Capt. Phlander Peay." The complaint stated that Peay and the five other officers had the mailing address of the DPSCS in Baltimore City. On May 20, 2008, a notice of a motions hearing was mailed to Peay and the other five officers via DPSCS. A similar notice was sent to the same address on June 2, 2008, and another on June 12, 2008 and June 19, 2008. On July 9, 2008, Barnett filed a request to defer dismissal, apparently because he had not yet been able to serve the six individual officers. The court granted the request and deferred dismissal until December 31, 2008. Another notice of a motions hearing was mailed to Peay at DPSCS on August 11, 2008, and again on September 2, 3, and 5, 2008. After the court denied the third motion to dismiss filed by the State of Maryland, DPSCS, and the Department of Public Safety, more notices were sent to Peay on September 22 and October 22, 2008.

A private process server went to Peay's Owings Mills apartment on December 25, 2008 to serve Peay with the complaint and a summons. Peay's sister, Donna Dingle, answered the door. The process server filed an affidavit on December 31, 2008 stating that Peay's "sister and co-resident" had been served with the papers at Peay's Owings Mills home address in Baltimore County. Peay did not file an answer to the complaint. The docket indicates that after Dingle was served at Peay's home address, the court's notices were sent to Peay with her correct name, often to both her home address as well as to DPSCS.

Reminder notices were mailed to all of the defendants on May 14, 2009. The trial was set to begin on August 3, 2009. On June 2, 2009, Barnett filed a request for an order of default against the five remaining defendants, including Peay. On July 1, 2009, the

3

circuit court entered a default order against each of the defendants and notice of the default order was mailed to Peay's Owings Mills address.[3]  On August 7, 2009, the circuit court directed the Clerk of the Court to enter judgment in favor of Barnett, and against the five remaining defendants for $250,000 in compensatory non-economic damages, and $250,000 in punitive damages.  All five defendants were held jointly and severally liable for a total of $500,000.  Copies of the final judgment were mailed on the same day.

From January of 2010 through June of 2015, Barnett filed multiple requests for writs of garnishment of wages against the defendants' employers, including a writ of garnishment to Peay's then-employer, the University of Maryland Medical System, which was served on or around on June 1, 2015.  Approximately nine months after the writ was filed, on March 28, 2016, Peay took action for the first time in this case by filing a motion to set aside the judgment of default and requesting a hearing.  Peay's motion included two affidavits and a copy of her lease during the period when Peay's sister, Dingle, was served.  The first was the sworn statement of Peay, stating that Dingle was only visiting Peay and their mother, who lived on the floor above Peay, and that Dingle did not live with Peay on December 25, 2008 or any other relevant time.  The second was an affidavit from Dingle, stating that she did not live with Peay at the time of service and did not give her the papers

---

[3]      On July 14, 2009, the court granted the motion for summary judgment filed by the State of Maryland, DPSCS, and the Division of Correction. The motion argued that Barnett had failed to state a cause of action against the State defendants and that he had not exhausted his administrative remedies.  The motion was granted for reasons stated on the record at a hearing.  The transcript of that hearing is not included in the record of this case.  Thus, we are not sure of the grounds for the granting of the motion.

that were served on her on December 25, 2008.  Peay's lease indicated that it was effective at the time the papers were served on her sister and that Peay was the only named tenant in the residence.

On May 25, 2016, the circuit court held a hearing on Peay's motion to set aside the judgment.  In a July 15, 2016 memorandum opinion, the circuit court found that service on Peay's sister was invalid, and that this constituted a "mistake" under Md. Rule 2-535(b).  However, the circuit judge denied the motion because Peay had not diligently sought to set aside the judgment.  Peay appealed to this Court.

## DISCUSSION

This case requires consideration of procedural rules relating to service of process, personal jurisdiction, the entry of a default judgment, and a circuit court's discretion to set aside or revise an order of default.  Typically, we review the circuit court's decision whether to grant a motion to revise a judgment pursuant to Md. Rule[4] 2-535(b)[5] under an abuse of discretion standard. *See* Rule 2-535(b); *Wells v. Wells*, 168 Md. App. 382, 394 (2006) ("The existence of a factual predicate of fraud, mistake, or irregularity, necessary to support vacating a judgment under Rule 2-535(b), is a question of law.  If the factual predicate exists, the court's decision on the motion is reviewed for abuse of discretion.") (Citation omitted).

---

[4]     Hereinafter, all references to a "Rule" refer to the Maryland Rules, unless otherwise stated.

[5]     We review the language of Rule 2-535(b) in detail below.

The basis of Peay's motion to set aside the judgment is that she was not properly served with notice of the proceedings. Rule 2-121(a) governs the proper method of service of process, and requires the following:

> Service of process may be made within this State or, when authorized by the law of this State, outside of this State (1) by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it; (2) **if the person to be served is an individual, by leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion**; or (3) by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: "Restricted Delivery--show to whom, date, address of delivery." Service by certified mail under this Rule is complete upon delivery. [ . . . ]

Thus, because service was not made on Peay, herself, to be valid, it must have been left "with a resident of suitable age and discretion" at Peay's "dwelling house or usual place of abode." Rule 2-121(a). The circuit court's decision "[w]hether a person has been served with process is essentially a question of fact." *Wilson v. Md. Dep't of Env't*, 217 Md. App. 271, 286 (2014) (Alteration in original) (quoting *Harris v. Womack*, 75 Md. App. 580, 585 (1988)).

## A. The Two-Step Default Judgment Process

Rule 2-613 governs the default judgment process. An underlying purpose of the default judgment rule is to provide the plaintiff "a means of relief against the delay and neglect of defendants." *See Smith-Myers Corp. v. Sherill*, 209 Md. App. 494, 508 (2013) (quoting *Glass v. Glass*, 284 Md. 169, 172 (1978)); *see also* Md. Rule 2-613. The Rule provides the circuit court with broad discretion to vacate an order of default before it

6

becomes an enrolled, final judgment. *See* Md. Rule 2-613(a). Additionally, prior to 1984, Maryland's default judgment process provided the circuit court with the power to enter a default judgment once the time period for which a defendant was required to plead expired; that judgment was considered final and the defendant could file an immediate appeal, even before the court determined damages. *See Franklin Credit Mgmt. Corp. v. Nefflen*, 436 Md. 300, 313 (2013) (hereinafter *Franklin Credit II*).[6]

In 1984, the Rules were changed to reflect a two-step default process. *See id.* at 317. Today the Rule provides that, once "the time for pleading has expired" and a defendant has not pled, upon the plaintiff's request, "the court . . . shall enter an order of default." Md. Rule 2-613(b). The remainder of the Rule provides, in pertinent part, the following:

> (c) Promptly upon entry of an order of default, the clerk shall issue a notice informing the defendant that the order of default has been entered and that the defendant may move to vacate the order within 30 days after its entry. [ . . . ]
>
> (d) The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.
>
> (e) If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order.

---

[6]     As the Court explained in *Franklin Credit II*, the problem with the old framework was that, in addition to filing an appeal, "a defaulting defendant also could have moved to set aside the judgment of default under former Rule 625 (1983), which permitted the court to exercise its revisory power over the judgment for a period of thirty days." *Id.* (Footnote omitted). Once the court conducted further proceedings and made a determination of damages, the defendant in default could appeal again, this time based on the court's damages award. *Id.* at 314.

7

(f) If a motion was not filed under section (d) of this Rule or was filed and denied, the court, upon request, may enter a judgment by default . . . , if it is satisfied (1) that it has jurisdiction to enter the judgment and (2) that the notice required by section (c) of this Rule was mailed. [ . . . ]

Md. Rule 2-613(c)-(f).

Under the current process, after the time for pleading has expired, the circuit court enters an order of default, which is "interlocutory in nature and can be revised by the court at any time up until the point a final judgment is entered." *Bliss v. Wiatrowski*, 125 Md. App. 258, 265 (Citations omitted), *cert. denied*, 354 Md. 571 (1999). "Because the defendant has an opportunity, under section (d) . . . to vacate the order of default that, in effect, is an adverse finding on liability, the defendant does not enjoy the same opportunity once the default judgment is entered." *Franklin Credit Mgmt. Corp. v. Nefflen*, 208 Md. App. 712, 733 (2012) (hereinafter *Franklin Credit I*) (quoting *Wells*, 168 Md. App. at 393), *aff'd*, *Franklin Credit II*, *supra*, 436 Md. 300.

At the expiration of thirty days, if the defendant does not move to vacate or the motion is denied, and the court "is satisfied (1) that it has jurisdiction to enter the judgment and (2) that the notice required by section (c) of this Rule was mailed," the court may determine damages and enter a default judgment. *See* Rule 2-613(f). The default judgment is the circuit court's final determination of both liability and damages.[7] *See Franklin Credit*

---

[7] Accordingly, only upon the entry of a default judgment may an appeal be taken. *See* Rule 1-202 (defining a "judgment" as "any order of court final in its nature entered pursuant to these rules"). This process "was intended to avoid the 'piecemeal appeal' issue that arose under the former rules." *Franklin Credit II*, 436 Md. at 317 (quoting *Banegura v. Taylor*, 312 Md. 609, 618 (1988)). The purpose of the limited revisory power in default

*I*, 208 Md. App. at 731-33 ("[A] default judgment is a final judgment for which the court's revisory power is limited.").

In her motion to set aside the default judgment, Peay primarily advanced two contentions to justify setting aside the default judgment: (1) she was not properly served, because her sister, Dingle, was not a "resident" under Rule 2-121 at the time of attempted service; and (2) that she "has a meritorious defense to the claim and to a judgment entered against her by default," because she was not present when Barnett claims he was assaulted by officers at Super Max. Peay's bases for setting aside the judgment mirror the criteria required under Rule 2-613(c) for a motion to vacate an order of default within thirty days after entry of the order of default. However, Peay filed her motion to set aside the default well beyond the thirty-day window after entry of the order. To give the circuit court the power to vacate the default judgment, therefore, another rule must apply.

### B.     The Circuit Court's Revisory Power Under Rule 2-535(b)

Rule 2-535(a) provides broad discretion to the circuit court to revise its judgment within thirty days after entry.[8] However, Rule 2-613(g) expressly restricts the circuit court

---

judgment cases is "to avoid giving the defendant in default two opportunities to set [the judgment of liability] aside." *Franklin Credit I*, 208 Md. App. at 733 (quoting *Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 427 (1995)).

[8]     Rule 2-535(a) provides, in pertinent part:

> On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2-534.

9

from exercising its revisory powers under 2-535(a) in default judgment cases. *See* Rule 2-613(g). We reviewed our caselaw explaining this restriction in *Franklin Credit I*:

> [U]nlike an order of default, . . . **a default judgment is a final judgment for which the court's revisory power is limited**. [*Bliss*, 125 Md. App. at 265]. *Accord* [*Wells*, 168 Md. App. at 393] ("[W]hen a default judgment is entered, the court retains the broad revisory power only 'as to the relief granted.' "); *Holly Hall Publ'n, Inc. v. County Banking and Trust Co.*, 147 Md. App. 251, 259 n. 6, 807 A.2d 1201, *cert. denied*, 371 Md. 614, 810 A.2d 961 (2002) ("a default judgment is not subject to the revisory power under 2–535(a), except as to the relief granted.").

208 Md. App. at 732-33.

Despite Rule 2-613(g)'s restriction on the court's revisory power under Rule 2-535(a), the Rule leaves open the court's power to revise the judgment under 2-535(b). *See Wells*, 168 Md. App. at 394 ("The narrow revisory power of the court under Rule 2-535(b) is unaffected by Rule 2-613(g)."). Subsection (b) provides: "On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity." Rule 2-535(b); *see Pickett v. Noba, Inc.*, 114 Md. App. 552, 556–57 (1997). Once the circuit court enters its default judgment in compliance with Rule 2-613, therefore, that judgment "may be stricken or revised only upon a showing of fraud, mistake, or irregularity in conformance with Md. Rule 2-535(b)." *Dir. of Fin. of Baltimore City v. Harris*, 90 Md. App. 506, 511 (1992); *see also Wells*, 168 Md. App. at 394 (quoting Md. Rule 2-535(b)) ("That revisory power [under Rule 2-535(b)],

10

which the court has after a judgment is enrolled . . . requires a showing of 'fraud, mistake, or irregularity.'").[9]

Unlike the court's power to vacate a default order under Rule 2-613(c), Rule 2-535(b) provides the circuit court's power to revise a default judgment after the judgment becomes final. *See Thacker v. Hale*, 146 Md. App. 203, 231 (2002) (quoting *Eliason v. Comm'r of Pers.*, 230 Md. 56, 59 (1962)) (explaining that Rule 2-535(b) "embraces all the power the courts of this State have to revise and control enrolled judgments and decrees"). Additionally, "[a] motion may be treated as a motion to revise under Md. Rule 2–535 even if it is not labeled as such." *Pickett*, 114 Md. App. at 557 (Citation omitted). For purposes of this appeal, therefore, and as the circuit court did below, we treat Peay's motion to set aside the default judgment as a motion to revise under Rule 2-535(b).

The court's revisory power under subsection (b) "is an exception to the general rule." *See Pelletier v. Burson*, 213 Md. App. 284, 290 (2013). As such, "Maryland courts have narrowly defined and strictly applied the terms fraud, mistake, [and] irregularity, in order to ensure finality of judgments." *Id.* (Alteration in original) (quoting *Thacker*, 146 Md. App. at 217). Our policy favoring the finality of judgments, therefore, guides our application of the court's Rule 2-535(b) revisory power. To ensure the finality of

---

[9] Further, "[t]he touchstones for applying Md. Rule 2–535 are further illuminated by [Md. Code (1974, 2013 Repl. Vol.), Cts. & Jud. Proc. Art. ("CJP"),] § 6-408." *Powell v. Breslin*, 430 Md. 52, 70-71 (2013). Pursuant to CJP § 6-408, in addition to "fraud, mistake, or irregularity," another ground for the court's revisory power is the "failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule." CJP § 6-408.

judgments, the movant must carry his or her significant burden of proof -- to establish "[t]he existence of fraud, mistake, or irregularity . . . by 'clear and convincing evidence.'" *Id.* (quoting *Das v. Das*, 133 Md. App. 1, 18 (2000)).

Peay did not argue in her motion to set aside the default judgment that any particular ground under Rule 2-535(b) applied.[10] The primary assertion in Peay's motion relating to a "fraud, mistake, or irregularity" was that her sister, Dingle, was not a "resident" at Peay's home as required by Rule 2-121(a), and therefore, that she was not properly served. Because she was not properly served, Peay argues that the circuit court had no personal jurisdiction over her, and therefore, the default judgment is void.

### 1. Improper Service of Process, if Not Waived, Constitutes a "Mistake" Under Rule 2-535(b).

We have previously held that "[i]mproper service of process is a proper ground to strike a judgment under Rule 2–535." *Pickett*, 114 Md. App. at 558 (citing *Miles v. Hamilton,* 269 Md. 708 (1973)). Based on the Court of Appeals' and this Court's prior interpretations of Rule 2-535(b), the only ground pertinent to the facts of this case is that of "mistake." A "mistake" under the Rule refers only to a "jurisdictional mistake." *See Chapman v. Kamara*, 356 Md. 426, 436 (1999) (citing *Claibourne v. Willis*, 347 Md. 684 (1997)) ("Mistake is limited to a jurisdictional mistake."). The Court of Appeals elaborated

---

[10] Peay's motion did include, however, an assertion that resembles one requirement to invoke the court's revisory power under Rule 2-535(b) -- that the movant show that he or she "has a meritorious defense to the complaint." *See Harris*, 90 Md. App. at 514 (citing *Shaw v. Adams,* 263 Md. 294, 296 (1971)). However, the failure to assert a meritorious claim or defense would not bar the defendant's request for relief from a void judgment.

on this principle in *Chapman* that "[t]he typical kind of mistake occurs when a judgment has been entered in the absence of valid service of process; hence the court never obtains personal jurisdiction over a party." *Id.* (quoting *Tandra S. v. Tyrone W.*, 336 Md. 303, 317 (1994)).

Peay filed with her motion to set aside the judgment two affidavits indicating that Dingle did not live with Peay at the time of service. Peay also attached a copy of her lease at the time the process server attempted service, which listed her as the only lessee of the apartment. Dingle's affidavit does not indicate whether she told the process server that she did or did not live at Peay's address, and neither party put forth any evidence to explain why the process server's affidavit indicated that notice was served on Peay's "sister and co-resident." Although Peay's sister stated that she "did not give to [Peay] any paperwork which was served on [her]" at Peay's address, Peay has never asserted whether she actually received the papers, and neither explained what happened to them after they were given to Dingle at Peay's home on Christmas Day. Both Peay and Dingle affirm in their affidavits, however, that Dingle did not live at Peay's home and, therefore, was not a "resident" under Rule 2-121(a).

In this case, the circuit court found that Peay was not properly served because the papers were served on Dingle, who the court found was not a "resident" under Rule 2-121(a) at the time of attempted service.[11] Assuming Peay did not waive the right to raise

---

[11] In his brief, Barnett argues that service on Dingle was proper because the use of the word "resident" in Md. Rule 2-121 "indicates an intent that the person served must only be present at the abode rather than living there." This is contrary to the law generally. *See* 62B Am. Jur. 2d Process § 193 (2018) ("[A] short-term houseguest is not a person residing

the defense of lack of personal jurisdiction or insufficiency of service of process, this defect would typically constitute the prototypical "jurisdictional mistake" under Rule 2-535(b). *See Chapman*, 356 Md. at 436.

### 2. Mere Lack of Diligence Does Not Prevent a Court From Revising a Void Judgment.

Once the circuit court determined that the defect in service of process constituted a "mistake," it proceeded to address a second hurdle that a party seeking relief generally must cross if requesting revision under Rule 2-535(b). That is, the moving party must prove that she exercised ordinary diligence and acted in good faith. *See Capobianco v. Gordon*, 19 Md. App. 662, 668 (1974) (Citations omitted).[12] The "diligence and good faith test" emerged in our courts of equity more than a century ago and developed alongside the requirement for "strong" evidence of fraud, mistake, or irregularity to justify the revision of an enrolled judgment. *See Craig v. Wroth*, 47 Md. 281, 282 (1877).

In this case, the circuit court applied the "diligence and good faith test" and concluded that, although Peay had established that a "mistake" had occurred in the defect

---

in the usual place of abode of the person to be served . . . . Abode service is improper where the papers are left with the defendant's daughter-in-law who is only a visitor."). However, at first blush, some support for Barnett's position is found in *Plushner v. Mills*, 429 A.2d 444 (R.I. 1981). There, the defendant had actual notice of the lawsuit and process was served on his daughter while she was at his residence, even though she resided elsewhere. *Id.* at 446. However, the daughter possessed a key to the defendant's residence, and was placed in charge of the dwelling in his absence. *Id.* at 445. Given a broad view of residency, the court found that the daughter was a member of the defendant's household. *Id.* at 446. No such facts are present here. In our view, the circuit court correctly concluded that service on Peay's sister did not comply with Maryland's Rules.

[12]     The movant must also show that he or she has a meritorious defense, but we need not discuss that requirement here.

14

of service of process, she had not demonstrated that she exercised diligence and good faith in bringing the motion. The court emphasized that Peay had waited six years to move to vacate the default judgment, "failed to even allege that she did not receive subsequent Motions for Order of Default, an Order of Default, a Motion for Default Judgment and a Default Judgment," and that she "inexplicably waited until March 28, 2016, nearly nine (9) months after the writ [of garnishment] was issued, to challenge any of the underlying judgments."[13] The court concluded:

> Because Defendant Peay is unable to establish any basis for failing to respond to any of the notices and motions sent to her dwelling, all seeking a judgment against her, and her failure to participate or challenge these orders for six years, there is no basis to determine that Defendant Peay acted in good faith or with due diligence.

It is clear from our courts' prior analyses of grounds under Rule 2-535(b), however, that the equitable considerations of "diligence and good faith" do not apply to "jurisdictional mistakes" that would render a default judgment void. This conclusion holds true for a mistake involving either a mistake of "jurisdiction over the person -- obtained by proper service of process," or "jurisdiction over the subject matter -- the cause of action and the relief sought." *See Thacker*, 146 Md. App. at 225. Once the circuit court determines that the issuing court exceeded either its *in personam* jurisdiction or its subject matter jurisdiction, the court must find the prior judgment invalid.

---

[13] A reasonable assumption underlying the circuit court's findings is that Peay had actual knowledge of the proceedings.

Particularly in earlier discussions of the "diligence and good faith" test, our courts have been careful to exclude instances in which the court issuing the default judgment lacked personal jurisdiction. In one of the Court of Appeals' earliest opinions highlighting this exclusion, it said, "where the process has been regularly served upon a party. . . , a strong case must be presented, to justify the [c]ourt in striking out the judgment after the term has passed." *Anderson v. Graff*, 41 Md. 601, 608 (1875). Refusing to vacate the judgment, the Court emphasized, "It must not be lost sight of, that the process was regularly served upon the appellant as garnishee, by the sheriff." *Id.* at 609 (quoting *Freidenrich v. Moore*, 24 Md. 295, 308 (1866)). Similarly, the Court of Appeals in *Pumpian v. E.L. Rice & Co.* reiterated that only "[w]here [the] process has been regularly served upon the defendant" will the facts of an alleged "fraud, deceit, surprise, or irregularity" become relevant. 135 Md. 364, 109 A. 71, 72 (1919) (quoting *Foxwell v. Foxwell*, 122 Md. 272, 89 A. 494, 496 (1914)). In *Little*, the Court of Appeals responded to the assertion that the defendant was required to show that he "acted in good faith and with reasonable diligence":

> Both the plaintiffs and the trial court appear to have overlooked the distinction between a defect in the proceedings which goes to the jurisdiction of the court and other grounds upon which the reopening of a judgment may be sought. If, for example, a defendant learns that a judgment against him has been obtained by fraud or surprise and he does nothing for a long time to have it stricken out, he may well lose any right to relief which he might have had; but if, for some defect in service, the court lacked jurisdiction to proceed to judgment, quite a different situation is presented.

220 Md. at 314 (Citations omitted). The facts in *Little* to some extent mirror those here. As the Court of Appeals noted:

> [The circuit court] evidently found that the defendant knew of this suit since some time in March, 1952, and thought that he did nothing about the suit or the judgment until 1958. The judge then concluded as a matter of law that these findings would bar the striking out of the judgment at the late date when such relief was sought . . . .
>
> In this we think he was in error. Knowledge on the part of the defendant of the pendency of the suit and his consequent opportunity to come in and defend against the claim asserted, do not, of themselves, cure the defect of lack of personal service, and do not bar relief against a judgment obtained without personal service on the defendant.

*Id.* at 316.[14]

In *Tyrone W.*, we emphasized the exclusion of these circumstances from the application of the "diligence and good faith" test in the following way:

> A circuit court's decision about whether to grant a party relief from a judgment (**except from a judgment that is void as having been entered without jurisdiction** . . . ) on one of the grounds available for doing so is an equitable consideration within its sound discretion.

129 Md. App. at 281 (Emphasis added) (Citations omitted). Further blunting a diligence inquiry is the Supreme Court's apparent blessing of a defendant's decision to delay and default. *Ins. Corp. of Ireland*, 456 U.S. at 706 ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.").

---

[14] On this point, the nearly sixty-year-old decision in *Little* remains good law. As we discuss later, however, this may not be true of *dicta* in the case on waiver of personal jurisdiction.

17

Accordingly, the circuit court has no discretion to deny a motion to vacate a default judgment, based only on the equitable consideration of whether the defendant acted diligently and in good faith, where the circuit court never obtained personal jurisdiction over the defendant. The "diligence and good faith" test, does not apply to cases in which the court must decide whether a "jurisdictional mistake" justifies its exercise of its Rule 2-535(b) revisory power. Once the court finds that such a jurisdictional mistake exists, it must also find that the judgment is void and "without significance." *See Miles*, 269 Md. at 713 (Citations omitted).

It appears from the record that the complaint and summons were delivered to Peay's home address, the affidavit of service indicated on its face proper service under Rule 2-121, Peay did not claim that she did not receive the numerous notices of the default proceedings by mail, and Peay never provided any date upon which she became aware of the proceedings against her. The circuit court's decision to deny Peay's motion to revise or vacate the default judgment, however, cannot be upheld on the basis of her lack of diligence in bringing the motion. The court found that service of process was defective, but despite some facts that might have suggested waiver, made no finding that Peay had either waived or did not waive the right to object to the court's lack of personal jurisdiction. On that basis, the circuit court erred.

## C. The right to object to the circuit court's personal jurisdiction over the defendant may be waived.

Although the circuit court erred in denying Peay's motion to vacate on the basis of Peay's lack of diligence, some of the court's findings regarding Peay's actions may not be without significance to a waiver determination.[15] When a defendant raises improper service of process as grounds to revise a default judgment as a "mistake" under Rule 2-535(b), the circuit court must determine, if applicable, whether the judgment is nonetheless valid by virtue of the defendant's waiver of lack of personal jurisdiction. As we noted in *Chapman*, "Rule 2-535 has no application when the defenses of lack of personal jurisdiction and/or insufficient service of process have been waived." 356 Md. at 438 n. 6 (citing Md. Rule 2-322(a)). Accordingly, once the court in this case determined that service did not comply with Rule 2-121, it should have considered whether the circuit court obtained jurisdiction as a result of Peay's waiver of the right to object to the court's lack of personal jurisdiction, rather than applying the "diligence and good faith" test.

Here, if the right to raise the defense of personal jurisdiction was not waived, and the default judgment was therefore void as a matter of law, the court must exercise its Rule 2-535(b) power to vacate the judgment on the ground of "jurisdictional mistake." But if the court determines that the issuing court obtained personal jurisdiction over the defendant, in spite of the defect in service, there is no "mistake" to justify the circuit court's exercise of its revisory power under Rule 2-535(b).

The caselaw on waiver of personal jurisdiction has evolved from the time of *Little*. While not a waiver case, the *Little* Court in *dicta* stated that there can be no valid

---

[15] A potential waiver issue is always present when personal jurisdiction is at issue and the defendant's diligence is challenged.

proceeding against a person unless he or she "voluntarily waives such constitutional right." 220 Md. at 315 (quoting *Harvey v. Slacum*, 181 Md. 206, 210 (1942)).  However, nearly twenty-five years later, in *Ins. Corp. of Ireland*, the U.S. Supreme Court said that "the requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue . . . . The actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not." 456 U.S. at 704–05[16]; *see also Northbrook Bank & Trust Co. v. 300 Level, Inc.*, 37 N.E.3d 857, 863 (Ill. App. 2015) ("[A] defendant can validly waive service, even without filing

---

[16]     While the Supreme Court in *Ins. Corp. of Ireland* grounded personal jurisdiction in the Due Process Clause, *see* 456 U.S. at 702-03, the constitutional dimension to defects in service of process appears to disappear when the defendant has actual notice of the proceeding.  *See* 5C Wright, Miller, Kane, Marcus, Spencer & Steinman, Fed. Prac. & Proc. Civ. § 1391 (3d ed. 2017).  The authors of this treatise go on to note:

> A distinction should be drawn, however, between service of process objections and personal jurisdiction objections. An objection to personal jurisdiction may raise constitutional issues, and the non-appearance of the defendant should not constitute a waiver of that defense. Indeed, if there has been a failure of due process, that objection may permit relief from any judgment that has been entered or may be raised on collateral attack. Some personal jurisdiction objections are not so compelling, however. If the defendant is merely arguing that there is no jurisdiction because service of process or the content of the papers was defective or improper and thus did not effectuate jurisdiction over his person, then the objection is not of a constitutional dimension . . . .

*Id.*

Both the Federal Rules (Fed. R. Civ. Pro. 12(b), (h)) and the Maryland Rules (Rule 2-322(a)) distinguish between a waiver of personal jurisdiction and waiver of "insufficiency of process" and "insufficiency of service of process."

pleadings, if it undertakes actions -- involving not only the parties to the case, but to the court itself-- which establish the standard elements of equitable estoppel.").[17]

Based on our review, we can find no Maryland case which addresses circumstances in which the return of service on its face complies with Rule 2-121(a), the record indicates that the default papers and subsequent notices were delivered to the defendant's home address, and the plaintiff had no reason to know the sufficiency of service of process might be challenged until after some circumstance which would prevent the plaintiff from litigating his or her claim. We note, however, the persuasiveness of the test laid out by the court in *Combustion Systems*, 112 F.R.D. 685, in determining whether a defaulting defendant has waived his or her right to challenge the circuit court's *in personam* jurisdiction.

---

[17]     Since *Little*, the Maryland Rules have changed with respect to the waiver of personal jurisdiction and a defendant's right to raise the defense of lack of service of process. Prior to March 31, 1976, Maryland's Rule governing preliminary objections merely permitted defendants to raise the lack of personal jurisdiction and insufficiency of service of process in a motion to dismiss. *See* Md. Rule 323(a)(2), (5) (1961). The Rule required, in a separate subsection, that a motion raising defenses "except the defense of lack of jurisdiction over the subject matter" must be filed before any other pleading. *See* Md. Rule 323(c) (1961). It did not, however, indicate expressly that the failure to do so would result in a waiver of the right to raise the defense. Rule 323 was amended, however, in 1976 and provided that, although motions raising the defense of lack of subject matter jurisdiction may be filed at any time, if the defenses of lack of jurisdiction over the person or insufficiency of service of process are not filed before any other pleading, "the defense shall be deemed to have been waived." Md. Rule 323(b) (1976) (now found at Rule 2-322). This Rule does not govern the waiver-by-conduct question presented in this case. *See U.S. to use of Combustion Sys. Sales v. E. Metal Prod. & Fabrication, Inc.*, 112 F.R.D 685, 687 (M.D.N.C. 1986) (hereinafter *Combustion Systems*) (Citations omitted) (noting that the similar Federal Rule "only sets the outer limits for waiver due to untimely assertion of a defense. It does not encompass waiver by implication").

21

The court in *Combustion Systems* provided a two-tier test to determine if a defendant should be stopped from challenging service of process -- there, referred to as a "waiver by implication." *Id.* at 688. The first question is whether the plaintiff made a good faith effort to serve under the rules governing service of process. *Id.* at 688. The court suggested that, in making this determination, the court should examine "the type and extent of defect in service and the notice received by the defendant." *Id.* Clearly, where the defendant never received any notice of the proceedings prior to judgment, the circuit court should find that the judgment was void. Additionally, where defects are ascertainable on the face of the return of service, or where the plaintiff has knowledge of the defect and does nothing to correct it, the plaintiff cannot be said to have made a good faith effort to serve the defendant.

Secondly, the defendant must have "actual knowledge of the commencement of the action and his [or her] duty to defend." *Combustion Systems*, 112 F.R.D. at 689. The court in *Combustion Systems* noted, "This notice requires more than vague, general knowledge that a lawsuit will be or has been filed. Defendant must have knowledge that an action has in fact been commenced and sufficient notice so that it can be inferred that he [or she] knows of [the] duty to defend against the action." *Id.* However, "where the defective service may likely confuse the defendant as to the need to respond, even actual notice will not be sufficient" to fulfill this second requirement. *Id.*

These considerations are consistent with and reinforce our Courts' application of equitable estoppel where the defendant's delay and "conduct, misrepresentation or silence," *see Pryor v. Pryor*, 240 Md. 224, 230 (1968) (quoting *Croyle v. Croyle*, 184 Md.

22

126, 136 (1944)), have caused a prejudicial and detrimental change to the position of the plaintiff. *See Womack*, 75 Md. App. at 589.

The court in *Frank Keevan & Son, Inc. v. Callier Steel Pipe & Tube, Inc.*, articulates a position similar to *Combustion Systems*, and explained that inferring a waiver takes away the incentive for defendants,

> to avoid service of process by tricking process servers and lulling the opposing party into a good faith belief that service has been made. Then years after default was entered, and the lawsuit litigated, the erstwhile defendant could emerge . . . in an attempt to set aside the default.

107 F.R.D. 665, 673-74 (S.D. Fla. 1985). Further, applying these equitable considerations motivates defendants to raise objections to service of process early, rather than waiting until after the court has expended its resources in reaching a final judgment and preserves the finality of judgments. [18] *See Thacker*, 146 Md. App. at 229.

---

[18] See *Frank Keevan & Son* elaborating on its underlying reasoning:

> [W]hen a defendant's actions or inactions amount to willful misconduct, gross neglect, or other extreme and unusual behavior, a default judgment is appropriate and even necessary to ensure the functioning of the judicial process. A defendant cannot be permitted to "avoid or delay a plaintiff's right to judicial resolution of a dispute by ignoring the proceeding."

107 F.R.D. at 670 (quoting *McKenzie v. Wakulla Cnty.*, 89 F.R.D. 444, 445 (N.D. Fla. 1981)).

23

Accordingly, we reverse the circuit court's decision to deny Peay's motion to set aside the judgment and remand for further proceedings and a determination on waiver of personal jurisdiction.[19]

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED AND CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

---

[19] If Peay has any objection on the basis of a subject matter jurisdiction issue, such as exhaustion of administrative remedies, *see* n. 3, *supra*, she may raise it on remand.